YASHA RAHIMZADEH, ESQ. (SB # 230487)
Law Offices of Yasha Rahimzadeh
980 Ninth Street, 16th Floor
Sacramento, California 95814
Telephone: (916) 337-8066
Facsimile: (916) 446-7104
Email: yrlaw@attorneynorcal.com

Attorney for Plaintiffs
MICHAEL A. FARIA and
NANNETTE M. FARIA

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICHAEL A. FARIA and NANNETTE M. FARIA,<br><br>Plaintiffs,<br><br>vs.<br><br>PNC BANK, NATIONAL ASSOCIATION, a Pennsylvania corporation, SN SERVICING CORPORATION, an Alaska corporation, all persons unknown, claiming any legal or equitable right, title, estate, lien or interest in the property described in the complaint adverse to Plaintiff's title thereto, and DOES 1 through 20, inclusive,<br><br>Defendants.<br><br>_____ ) | Case No.:<br><br>**PLAINTIFFS' VERIFIED COMPLAINT FOR:**<br><br>(1) Violation of the FDCPA;<br><br>(2) Violation of the California Rosenthal Act;<br><br>(3) Breach of Contract;<br><br>(4) Quiet Title;<br><br>(5) Declaratory Relief;<br><br>(6) Temporary Restraining Order; and<br><br>(7) Preliminary Injunction |

Plaintiffs MICHAEL A. FARIA and NANNETTE M. FARIA (hereinafter "Plaintiffs")

sue PNC BANK, NATIONAL ASSOCIATION, SN SERVICING CORPORATION, all

persons unknown, claiming any legal or equitable right, title, estate, lien or interest in the

property described in the complaint adverse to Plaintiffs' title thereto, and DOES 1 through

20  for damages, Quiet Title, Declaratory Relief, and a Temporary Restraining Order and Preliminary Injunction.

## I.

## PARTIES AND JURISDICTION

1.     Plaintiff MICHAEL A. FARIA is a natural person, and resides in the State of California, County of San Joaquin.

2.     Plaintiff NANNETTE M. FARIA is a natural person, and resides in the State of California, County of San Joaquin.

3.     Plaintiffs are residents and owners of the real property located at 2315 Piccardo Circle, Stockton, California 95207 (Assessors Parcel No. 110-080-08) ("Subject Property").

4.     All acts complained of herein occurred within the territorial jurisdiction of the above-captioned Court.

5.     Defendant PNC BANK, NATIONAL ASSOCIATION ("PNC") is a mortgage lender and Pennsylvania corporation with corporate headquarters located at 300 Fifth Avenue, in Pittsburgh, Pennsylvania, 15222-2401.

6.     Defendant SN SERVICING CORPORATION ("SN") is a mortgage servicer and Alaska corporation with corporate headquarters located at 13702 Coursey Boulevard, Building 1A, Baton Rouge, Louisiana 70817.

## II.

## JURISDICTION

7.     Federal court jurisdiction is founded upon claims made under the Fair Debt Collection Practices Act (FDCPA) [15 U.S.C. § 1692, et seq.] The court has supplemental jurisdiction over the state law claims made herein.

8.     The corpus of this Complaint is centered on federal questions, as contemplated by the Codes, id. Thus, Jurisdiction is proper in this court.

## III.

## VENUE

9.      Pursuant to 28 U.S.C. § 1391, venue is proper in this court because a substantial part of the events giving rise to this Complaint occurred in this District.

## IV.

## FACTUAL ALLEGATIONS

10.     Upon information and belief and by published statements made by Defendants, Plaintiffs allege:

11.     On or about April 7, 1988, Plaintiffs purchased the Subject Property. See Grand Deed attached as Exhibit "A".

12.     On or about October 19, 2006, National City Bank, as lender to Plaintiffs for their purchase of the Subject Property, recorded a Deed of Trust against the Subject Property. See Deed of Trust attached as Exhibit "B".

13.     Plaintiffs are informed and believe that Defendant PNC is the successor-in-interest to National City Bank.

14.     Plaintiffs are informed and believe that Defendant SN is the current servicer for Defendant PNC.

15.     On or about February 21, 2014, Plaintiffs filed a Voluntary Petition for Chapter 13 Bankruptcy with the United States Bankruptcy Court for the Eastern District of California (Case No. 2014-21631).

16.     In conjunction with their Voluntary Petition, on or about July 10, 2014, Plaintiffs filed a Second Amended Chapter 13 Plan of repayment in the above-referenced bankruptcy proceeding. Such Plan included payments to Defendant PNC  See Second Amended Chapter 13 Plan, attached as Exhibit "C" to this Complaint.

17.     On or about June 30, 2016, Plaintiffs filed a First Modified Chapter 13 Plan. See First Modified Chapter 13 Plan, attached as Exhibit "D" to this Complaint.

18.     During the administration of their bankruptcy, Plaintiffs discovered that Defendant PNC's mortgage servicer, Bayview Loan Servicing LLC ("Bayview"), had not

been providing payment for the property taxes associated with the Subject Property. Through their bankruptcy counsel, Plaintiffs filed a Motion to Modify their Plan and demanded an accounting from Bayview. See Motion to Modify Plan, attached as Exhibit "E" to this Complaint.

19.    On or about December 23, 2015, Bayview responded to Plaintiffs alleging that they needed to pay $7263.32 to bring their impound account (i.e. the account holding their homeowner's insurance and property tax payments) current. Plaintiffs provided Bayview with a check in the requested amount and the check was deposited soon thereafter.

20.    Since Bayview was unable to account for the payments received, from Plaintiffs' Chapter 13 Plan, Plaintiffs objected to Bayview's Proof of Claim ($17,600).

21.    On or about March 16, 2017, Plaintiff's Motion to Modify Plan was granted. See Order Granting Motion to Modify Plan, attached as Exhibit "F" to this Complaint.

22.    On or about October 3, 2017, Plaintiffs' bankruptcy proceeding was closed.

23.    Since the closure of Plaintiffs' bankruptcy, Defendants have constantly bombarded Plaintiffs with correspondence and notices demanding payment for amounts allegedly owed taxes and homeowner's insurance Defendants claim they paid on Plaintiffs' behalf for the Subject Property. Plaintiffs do not believe that such amounts are owed or believe that Plaintiffs paid such amounts directly.

24.    On or about August 31, 2023, Defendants served upon Plaintiffs a 'Notice of Trustee Sale' claiming that Plaintiffs were in default to Defendants in the amount of $61,893.37, and, if such amount were not paid to Defendants, the Subject Property could be sold at a Trustee Sale scheduled for October 2, 2023. Plaintiffs deny Defendants' claim and, despite having requested an accounting, to-date, have not received such accounting. The Subject Property is scheduled for Trustee Sale on October 2, 2023. See Notice of Trustee Sale, attached as Exhibit "G" to this Complaint.

## V.

## FIRST CAUSE OF ACTION

### (Violation of the FDCPA)

25.    Plaintiffs incorporate herein each and every allegation contained in paragraphs 1 through 24 as though fully set forth herein.

26.    This cause of action is asserted against all Defendants.

27.    Defendants are debt collectors engaged in a business the principal purpose of which is the enforcement of security interests. 15 U.S.C. § 1692a(6). Such a debt collector is prohibited from [t]aking or threatening to take any nonjudicial action to effect dispossession or disablement of property if (A) there is no present right to possession of the property claimed as collateral through an enforceable security interest; (B) there is no present intention to take possession of the property; or (C) the property is exempt by law from such dispossession or disablement. 15 U.S.C. § 1692f(6) Defendants violated this provision through the use of correspondence and notices threatening to take nonjudicial action (i.e. the Trustee Sale) to dispossess Plaintiffs of the Subject Property without a legal ability or intention to do so.

28.    Defendants are debt collectors engaged in a business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another. 15 U.S.C. § 1692a(6). Defendants treated the allegedly delinquent obligations as an obligation or alleged obligation of a consumer to pay money arising out of a transaction. 15 U.S.C. § 1692a(5).

29.    Defendants committed the following violations of the FDCPA:

a.    § 1692d ("A debt collector may not engage in any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt.") The actions of Defendants were harassing.

b.    § 1692e(6) (The false representation or implication that a sale,

referral, or other transfer of any interest in a debt shall cause the consumer to— (A) lose any claim or defense to payment of the debt; or (B) become subject to any practice prohibited by this subchapter) Defendants August 31, 2023 Notice of Trustee Sale provided that Plaintiffs were in default to Defendants in the amount of $61,893.37, and, if such amount were not paid to Defendants, the Subject Property could be sold at a Trustee Sale scheduled for October 2, 2023.

30.    The foregoing acts and omissions constitute violations of the FDCPA, including but not limited to each and every one of the above-cited provisions of the FDCPA, 15 U.S.C. § 1692 et seq.

31.    Each Defendant named in this cause of action is liable to the Plaintiffs for every FDCPA violation described in this complaint under 15 U.S.C. § 1692k.

**VI.**

**SECOND CAUSE OF ACTION**

**(Violation of the California Rosenthal Act)**

32.    Plaintiffs incorporate herein each and every allegation contained in paragraphs 1 through 31 as though fully set forth herein.

33.    This cause of action is asserted against all Defendants.

34.    The foregoing acts and omissions constitute violations of the California Rosenthal Act, Cal. Civ. Code § 1788 et seq.

35.    Each Defendant named in this cause of action is liable to the Plaintiffs for every violation described in this complaint under Cal. Civ. Code § 1788.30.

**VII.**

**THIRD CAUSE OF ACTION**

**(Breach of Contract)**

36.    Plaintiff incorporates herein by reference as though fully set forth herein the allegations of Paragraphs 1-35 inclusive.

37.     Plaintiff has performed all the acts, services and conditions required on its part to be performed pursuant to the Deed of Trust held by National City Bank and its successor-in-interest, Defendant PNC.

38.     Despite Plaintiff's performance, Defendants breached the terms of the Agreement by continuing to attempt to collect debts associated with the Deed of Trust which Defendants know or should know are not currently due.

39.     Although demand therefore has been made, Defendants have refused to perform under the terms of the Deed of Trust.

40.     Plaintiffs have made a good faith to mitigate their damages, but to date has been unable to do so.

41.     As a result of the foregoing breaches as specified above, Plaintiff has been damaged in the amount to be proven at trial.

## VIII.

## FOURTH CAUSE OF ACTION

### (Quiet Title)

42.     Plaintiffs incorporate herein by reference as though fully set forth herein the allegations of Paragraphs 1-41 inclusive.

43.     Plaintiffs are informed and believes that Defendants, relying upon the Deed of Trust, claim a security interest in the Subject Property. Plaintiffs deny Defendants' claim.

44.     A dispute has arisen between the parties regarding ownership for the Subject Property.

45.     An actual controversy has arisen and now exists between Plaintiffs and Defendants concerning their conflicting claims, rights, titles, estates, liens or interests in the Subject Property in that each party disputes to the others' claims in connection therewith.

46.     Plaintiffs desire a judicial determination of the parties' respective rights and duties relative to Plaintiffs' and Defendants' conflicting claims, rights, titles, estates, liens or interests in the Subject Property as herein alleged. A judicial declaration is necessary

1  and appropriate at this time under the circumstances in order that Plaintiffs may ascertain

2  their rights and duties and obtain a fair and just adjudication of this dispute.

3  ## IX.

4  ## FIFTH CAUSE OF ACTION

5  ### (Declaratory Relief)

6  47.    Plaintiff incorporates herein by reference as though fully set forth herein the

7  allegations of Paragraphs 1-46 inclusive.

8  48.    A dispute currently exists as to the parties' respective rights to the Subject

9  Property.

10  49.    An actual controversy exists as to the parties' respective rights to Subject

11  Property.

12  50.    Unless and until this Court issues an appropriate declaration of the rights of

13  the parties in connection with the ownership of the Subject Property, there will continue to

14  be disputes as to ownership thereof that may result in the transfer of title to the Subject

15  Property, encumbrance of the Subject Property, or hypothecation or pledge or transfer

16  thereof, with no other opportunity to have the position of Plaintiffs known.

17  51.    On the foregoing basis, Plaintiffs requests a determination by the Court

18  regarding the parties' respective rights to the Subject Property.

19  ## X.

20  ## REMEDIAL ALLEGATIONS

21  ### (Request for Temporary Restraining Order and Preliminary Injunction)

22  52.    Plaintiff incorporates herein by reference as though fully set forth herein the

23  allegations of Paragraphs 1-51 inclusive.

24  53.    Defendants have scheduled the Trustee Sale of the Subject Property for

25  October 2, 2023. If the sale is conducted and becomes final, the harm to Plaintiffs would

26  be severe and irreparable.

27  53.    Remedies at law are inadequate because no damage remedy could replace

28  the Subject Property as it is unique and has been Plaintiffs' primary residence since 1988.

54.     Defendants will suffer no harm if the Court delays the Trustee Sale of the Subject Property until the rights of the parties are adjudicated. If necessary, Plaintiffs are prepared to post a bond to ensure the amount, Defendants allege is owed by Plaintiffs, is paid in the event Defendants obtain a judgment in their favor.

55.     Defendants will suffer irreparable and permanent harm if the Subject Property is sold at the Trustee Sale as, if sold, it will likely be sold to a bona fide purchaser for value against which Plaintiffs likely will not have any legal or equitable rights, which will extinguish Plaintiffs' right to title and possession of the Subject Property.

**WHEREFORE**, Plaintiff prays judgment as follows:

1.     For a Temporary Restraining Order preserving the status quo by deferring the effective date of Defendants' Trustee Sale of the Subject Property from October 2, 2023, until a Preliminary Injunction motion can be heard and decided.

2.     For a Preliminary Injunction enjoining Defendants' Trustee Sale of the Subject Property.

3.     For a Declaratory Judgment providing that Plaintiff is the sole and exclusive owner of the Subject Property and Defendants do not have a legal or equitable interest in the Subject Property;

4.     For compensatory damages in an amount to be determined at trial according to proof;

5.     For attorney's fees and costs as permitted;

6.     For such other and further relief as the Court may deem just and proper.

Dated: _9/18/23_                **LAW OFFICES OF YASHA RAHIMZADEH**


By: _____
     **YASHA RAHIMZADEH**
     Attorney for Plaintiffs
     MICHAEL A. FARIA and
     NANNETTE M. FARIA

1

## DECLARATION UNDER PENALTY OF PERJURY

2

3      We, Plaintiffs MICHAEL A. FARIA and NANNETTE M. FARIA, citizens of the

4  United States and residents of the State of California, hereby declare under penalty of

5  perjury pursuant to 28 U.S.C. § 1746 that the foregoing is true and correct to the best of

6  my knowledge.

7

8      Executed this __18 TH__ of September, 2023.

9

10      _____

11          MICHAEL A. FARIA

12

13      _____

14          NANNETTE M. FARIA

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# EXHIBIT "A"

**RECORDING REQUESTED BY**

And When Recorded Mail This Deed and, Unless
Otherwise Shown Below, Mail Tax Statements To:

NAME ⌐ Mr & Mrs. Michael Faria
STREET
ADDRESS 1522 Yale
CITY
STATE Stockton, Ca. 95203
ZIP ⌐

Title Order No. _____ Escrow No. _26643_

RECORDED AT REQUEST OF
CENTRAL VALLEY TITLE COMPANY

86 APR -7 AM 9: 00

**SPACE ABOVE THIS LINE FOR RECORDER'S USE**

DOCUMENTARY TRANSFER TAX $ __224.40__
X ___COMPUTED ON FULL VALUE OF PROPERTY CONVEYED,
___OR COMPUTED ON FULL VALUE LESS LIENS AND
ENCUMBRANCES REMAINING AT TIME OF SALE
Central Valley Title
_____
Signature of Declarant or Agent determining tax     Firm Name

---

| A.P.N 110-080-08 | **GRANT DEED** | |

**FOR A VALUABLE CONSIDERATION, receipt of which is hereby acknowledged,**

JAMES H. SMITH and CAROLE E. SMITH, husband and wife
hereby GRANT(S) to

MICHAEL A. FARIA and NANNETTE M. FARIA, husband and wife, as joint tenants

the following described real property in the   City of Stockton
county of San Joaquin                , state of California:

Lot 8, as shown upon Map entitled, TRACT NO. 1323, VENETIAN BRIDGES, UNIT
NO. 1, filed for record April 25, 1978 in Book 23 of Maps and Plats, page
50, San Joaquin County Records.

Except therefrom all oil, gas, minerals and other hydrocarbon substances
lying below a depth of 500 feet beneath the surface of said land, without
the right of surface entry as reserved in Deed by Schmitz Development Inc.,
recorded August 2, 1979 Series No. 7957751, San Joaquin County Records.

**DOCUMENTARY TRANSFER TAX**
County of San Joaquin

224 40

Dated   March 31, 1988

STATE OF ~~CALIFORNIA~~ MISSOURI
COUNTY OF _____ } ss. St. Louis
On _____ before me, the under-
signed, a Notary Public in and for said County and State,
personally appeared __James H. Smith__
__Carole E. Smith__

JAMES H. SMITH
CAROLE E. SMITH

_____
_____, known to me
to be the person_ whose names_____ subscribed to the
within instrument and acknowledged that _they_
executed the same.

_____
_____
Jacqueline Held
Name (Typed or Printed)
Notary Public in and for Said County and State

QUELINE HELD, NOTARY PUBLIC
County of St. Louis, State of Missouri
My Commission Expires October 24, 19__

(Space above for official seal)

**MAIL TAX STATEMENTS TO PARTY SHOWN ON FOLLOWING LINE; IF NO PARTY SO SHOWN, MAIL AS DIRECTED ABOVE**

| Name | Street Address | City & State |

# EXHIBIT "B"

Recording Requested By:

Return To:

NCB, CLS BRECKSVILLE
LOCS, LOCATOR 7120
P.O. BOX 5570
CLEVELAND, OH 44101

Prepared By:
JUDI SLAYTON,
NATIONAL CITY BANK
2575 GRAND CANAL BLVD #330,
STOCKTON CA 95207

**DOC # 2006-221443**
10/19/2006 08:21A Fee:36.00
Page 1 of 10
Recorded in Official Records
County of San Joaquin
GARY W. FREEMAN
Assessor-Recorder-County Clerk
Paid by ALLIANCE TITLE CO

———— State of California ————                    ———— Space Above This Line For Recording Data ————

## DEED OF TRUST
(With Future Advance Clause)

1.  **DATE AND PARTIES.** The date of this Deed of Trust (Security Instrument) is ............ October 6, 2006 ......................
    The parties and their addresses are:
    TRUSTOR:  MICHAEL A. FARIA and
              NANNETTE M. FARIA Husband and Wife as Joint Tenants

              2315 PICCARDO CIR STOCKTON, California 95207

    ☐ If checked, refer to the attached Addendum incorporated herein, for additional Trustors, their signatures and
    acknowledgments.
    TRUSTEE: National City Bank

    LENDER: NATIONAL CITY BANK

2.  **CONVEYANCE.** For good and valuable consideration, the receipt and sufficiency of which is acknowledged, and to secure
    the Secured Debt (defined below) and Trustor's performance under this Security Instrument, Trustor irrevocably grants,
    conveys and sells to Trustee, in trust for the benefit of Lender, with power of sale, the following described property:

    SEE LEGAL DESCRIPTION ATTACHED HERETO AND MADE A PART HEREOF.

    The property is located in San Joaquin ............................................ at ............................................
                                          (County)
    2315 PICCARDO CIR ............. , STOCKTON ............................................ , California 95207 ....
         (Address)                         (City)                                          (ZIP Code)
    Together with all rights, easements, appurtenances, royalties, mineral rights, oil and gas rights, all water and riparian rights,
    ditches, and water stock and all existing and future improvements, structures, fixtures, and replacements that may now, or at
    any time in the future, be part of the real estate described above (all referred to as "Property").

3.  **MAXIMUM OBLIGATION LIMIT.** The total principal amount secured by this Security Instrument at any one time shall
    not exceed $ .... 200,000.00 ........ . This limitation of amount does not include interest and other fees and charges validly
    made pursuant to this Security Instrument. Also, this limitation does not apply to advances made under the terms of this
    Security Instrument to protect Lender's security and to perform any of the covenants contained in this Security Instrument.

4.  **SECURED DEBT AND FUTURE ADVANCES.** The term "Secured Debt" is defined as follows:
    A. Debt incurred under the terms of all promissory note(s), contract(s), guaranty(ies) or other evidence of debt

---

**CALIFORNIA - HOME EQUITY LINE OF CREDIT DEED OF TRUST** (NOT FOR FNMA, FHLMC, FHA OR VA USE)
Experε? ©1994 Bankers Systems, Inc., St. Cloud, MN Form OCP-REDT-CA 5/20/2005                    *(page 1 of 6)*
VMP-**C465(CA)** (0508)                    VMP Mortgage Solutions, Inc. (800)521-7291



described below and all their extensions, renewals, modifications or substitutions. *(Include items such as borrowers' names, note or contract amounts, interest rates (whether variable), maturity dates, etc.)*

**Maturity Date: 10/06/2036**

    B. All future advances from Lender to Trustor or other future obligations of Trustor to Lender under any promissory note, contract or guaranty, or other evidence of debt executed by Trustor in favor of Lender after this Security Instrument if this Security Instrument is specifically referenced on the evidence of other debt. If more than one person signs this Security Instrument, each Trustor agrees that this Security Instrument will secure all future advances and future obligations that are given to or incurred by any one or more Trustor, or any one or more Trustor and others. All future advances and other future obligations are secured by this Security Instrument even though all or part may not yet be advanced. All future advances and other future obligations are secured as if made on the date of this Security Instrument.

    C. All additional sums advanced and expenses incurred by Lender for insuring, preserving or otherwise protecting the Property and its value and any other sums advanced and expenses incurred by Lender under the terms of this Security Instrument.

    D. Performance of every obligation in this Security Instrument (including any subsequent instrument amending this Security Instrument) and any instrument now or later evidencing or securing any indebtedness secured by this Security Instrument.

In the event that Lender fails to provide any required notice of the right of rescission, Lender waives any subsequent security interest in Trustor's principal dwelling that is created by this Security Instrument.

5. **DEED OF TRUST COVENANTS.** Trustor agrees that the covenants in this section are material obligations under the Secured Debt and this Security Instrument. If Trustor breaches any covenant in this section, Lender may refuse to make additional extensions of credit and reduce the credit limit. By not exercising either remedy on Trustor's breach, Lender does not waive Lender's right to later consider the event a breach if it happens again.

**Payments.** Trustor agrees that all payments under the Secured Debt will be paid when due and in accordance with the terms of the Secured Debt and this Security Instrument.

**Prior Security Interests.** With regard to any other mortgage, deed of trust, security agreement or other lien document that created a prior security interest or encumbrance on the Property, Trustor agrees to make all payments when due and to perform or comply with all covenants. Trustor also agrees not to allow any modification or extension of, nor to request any future advances under any note or agreement secured by the lien document without Lender's prior written approval.

**Claims Against Title.** Trustor will pay all taxes, assessments, liens, encumbrances, lease payments, ground rents, utilities, and other charges relating to the Property when due. Lender may require Trustor to provide to Lender copies of all notices that such amounts are due and the receipts evidencing Trustor's payment. Trustor will defend title to the Property against any claims that would impair the lien of this Security Instrument. Trustor agrees to assign to Lender, as requested by Lender, any rights, claims or defenses Trustor may have against parties who supply labor or materials to maintain or improve the Property.

**Property Condition, Alterations and Inspection.** Trustor will keep the Property in good condition and make all repairs that are reasonably necessary. Trustor shall not commit or allow any waste, impairment, or deterioration of the Property. Trustor agrees that the nature of the occupancy and use will not substantially change without Lender's prior written consent. Trustor will not permit any change in any license, restrictive covenant or easement without Lender's prior written consent. Trustor will notify Lender of all demands, proceedings, claims, and actions against Trustor, and of any loss or damage to the Property. Lender or Lender's agents may, at Lender's option, enter the Property at any reasonable time for the purpose of inspecting the Property. Lender shall give Trustor notice at the time of or before an inspection specifying a reasonable purpose for the inspection. Any inspection of the Property shall be entirely for Lender's benefit and Trustor will in no way rely on Lender's inspection.

**Authority to Perform.** If Trustor fails to perform any duty or any of the covenants contained in this Security Instrument, Lender may, without notice, perform or cause them to be performed. Trustor appoints Lender as attorney in fact to sign Trustor's name or pay any amount necessary for performance. Lender's right to perform for Trustor shall not create an obligation to perform, and Lender's failure to perform will not preclude Lender from exercising any of Lender's other rights under the law or this Security Instrument.

**Leaseholds; Condominiums; Planned Unit Developments.** Trustor agrees to comply with the provisions of any lease if this Security Instrument is on a leasehold. If the Property includes a unit in a condominium or a planned unit development, Trustor will perform all of Trustor's duties under the covenants, by-laws, or regulations of the condominium or planned unit development.

*Experta*® © 1994 Bankers Systems, Inc., St. Cloud, MN Form OCP-REDT-CA 5/20/2005
VMP®-**C465(CA)** (0508)

 *(page 2 of 6)*

**Condemnation.** Trustor will give Lender prompt notice of any pending or threatened action, by private or public entities to purchase or take any or all of the Property through condemnation, eminent domain, or any other means. Trustor authorizes Lender to intervene in Trustor's name in any of the above described actions or claims. Trustor assigns to Lender the proceeds of any award or claim for damages connected with a condemnation or other taking of all or any part of the Property. Such proceeds shall be considered payments and will be applied as provided in this Security Instrument. This assignment of proceeds is subject to the terms of any prior mortgage, deed of trust, security agreement or other lien document.

**Insurance.** Trustor shall keep Property insured against loss by fire, flood, theft and other hazards and risks reasonably associated with the Property due to its type and location. This insurance shall be maintained in the amounts and for the periods that Lender requires. What Lender requires pursuant to the preceding two sentences can change during the term of the Secured Debt. The insurance carrier providing the insurance shall be chosen by Trustor subject to Lender's approval, which shall not be unreasonably withheld. If Trustor fails to maintain the coverage described above, Lender may, at Lender's option, obtain coverage to protect Lender's rights in the Property according to the terms of this Security Instrument.

All insurance policies and renewals shall be acceptable to Lender and shall include a standard "mortgage clause" and, where applicable, "loss payee clause." Trustor shall immediately notify Lender of cancellation or termination of the insurance. Lender shall have the right to hold the policies and renewals. If Lender requires, Trustor shall immediately give to Lender all receipts of paid premiums and renewal notices. Upon loss, Trustor shall give immediate notice to the insurance carrier and Lender. Lender may make proof of loss if not made immediately by Trustor.

Unless otherwise agreed in writing, all insurance proceeds shall be applied to the restoration or repair of the Property or to the Secured Debt, whether or not then due, at Lender's option. Any application of proceeds to principal shall not extend or postpone the due date of the scheduled payment nor change the amount of any payment. Any excess will be paid to the Trustor. If the Property is acquired by Lender, Trustor's right to any insurance policies and proceeds resulting from damage to the Property before the acquisition shall pass to Lender to the extent of the Secured Debt immediately before the acquisition.

**Financial Reports and Additional Documents.** Trustor will provide to Lender upon request, any financial statement or information Lender may deem reasonably necessary. Trustor agrees to sign, deliver, and file any additional documents or certifications that Lender may consider necessary to perfect, continue, and preserve Trustor's obligations under this Security Instrument and Lender's lien status on the Property.

6. **WARRANTY OF TITLE.** Trustor warrants that Trustor is or will be lawfully seized of the estate conveyed by this Security Instrument and has the right to irrevocably grant, convey and sell the Property to Trustee, in trust, with power of sale. Trustor also warrants that the Property is unencumbered, except for encumbrances of record.

7. **DUE ON SALE.** Lender may, at its option, declare the entire balance of the Secured Debt to be immediately due and payable upon the creation of, or contract for the creation of, a transfer or sale of all or any part of the Property. This right is subject to the restrictions imposed by federal law (12 C.F.R. 591), as applicable.

8. **DEFAULT.** Trustor will be in default if any of the following occur:

   **Fraud.** Any Consumer Borrower engages in fraud or material misrepresentation in connection with the Secured Debt that is an open end home equity plan.

   **Payments.** Any Consumer Borrower on any Secured Debt that is an open end home equity plan fails to make a payment when due.

   **Property.** Any action or inaction by the Borrower or Trustor occurs that adversely affects the Property or Lender's rights in the Property. This includes, but is not limited to, the following: (a) Trustor fails to maintain required insurance on the Property; (b) Trustor transfers the Property; (c) Trustor commits waste or otherwise destructively uses or fails to maintain the Property such that the action or inaction adversely affects Lender's security; (d) Trustor fails to pay taxes on the Property or otherwise fails to act and thereby causes a lien to be filed against the Property that is senior to the lien of this Security Instrument; (e) a sole Trustor dies; (f) if more than one Trustor, any Trustor dies and Lender's security is adversely affected; (g) the Property is taken through eminent domain; (h) a judgment is filed against Trustor and subjects Trustor and the Property to action that adversely affects Lender's interest; or (i) a prior lienholder forecloses on the Property and as a result, Lender's interest is adversely affected.

   **Executive Officers.** Any Borrower is an executive officer of Lender or an affiliate and such Borrower becomes indebted to Lender or another lender in an aggregate amount greater than the amount permitted under federal laws and regulations.

9. **REMEDIES ON DEFAULT.** In addition to any other remedy available under the terms of this Security Instrument, Lender may accelerate the Secured Debt and foreclose this Security Instrument in a manner provided by law if Trustor is in default. In some instances, federal and state law will require Lender to provide Trustor with notice of the right to cure, or other notices and may establish time schedules for foreclosure actions.

   At the option of the Lender, all or any part of the agreed fees and charges, accrued interest and principal shall become immediately due and payable, after giving notice if required by law, upon the occurrence of a default or anytime thereafter. Lender shall be entitled to, without limitation, the power to sell the Property.

   If Lender elects to foreclose by exercise of the power of sale, Lender will declare the entire Secured Debts due and payable by delivering to Trustee this Security Instrument and any evidence of the Secured Debts, receipts and evidence of expenditures made and secured, as Trustee requires. When the legally prescribed time passes after Trustee or Lender duly records a notice of default, the Trustee, Lender or other person authorized to take the sale will give a notice of sale as required by law and will

cause the Property to be sold at the time and place fixed in the notice of sale. Lender may rescind any notice of default at any time before the Property's sale. Rescission will occur when Lender executes and records a notice of rescission that cancels any prior notice of default and any related acceleration of the Secured Debts. Lender's rescission will not waive any default then existing or subsequently occurring or preclude Lender exercising its remedies, including the power of sale, at another time.

The Property can be sold as a whole or in separate parcels and in any order that Trustee decides. The Property will be sold to the highest bidder for cash in lawful money of the United States, payable at sale time. The Property can be sold to anyone, including Trustor, Trustee or Lender. Trustee may postpone the sale of any part of the Property by public announcement at the time and place of this sale and afterwards at the time fixed by the preceding postponement. Upon any sale of the Property, Trustee will make and deliver a special or limited warranty deed that conveys the property sold to the purchaser or purchasers. Under this special or limited warranty deed, Trustee will covenant that Trustee has not caused or allowed a lien or an encumbrance to burden the Property and that Trustee will specially warrant and defend the Property's title to the purchaser or purchasers at the sale against all lawful claims and demand of all persons claiming by, through or under Trustee. The deed's recital of facts will be conclusive proof of the truthfulness of these facts.

The proceeds from the Property's sale will be applied to the sale expenses, Trustee's expenses, Lender's attorneys' fees due on Trustor's default, sums that Trustee or Lender paid for procuring a title search of the Property's title subsequent to the execution of this Security Instrument, all outstanding amounts due under this Security Instrument and the remainder to anyone legally entitled to the remaining amounts due.

The acceptance by Lender of any sum in payment or partial payment on the Secured Debt after the balance is due or is accelerated or after foreclosure proceedings are filed shall not constitute a waiver of Lender's right to require complete cure of any existing default. By not exercising any remedy on Trustor's default, Lender does not waive Lender's right to later consider the event a default if it happens again.

10. **EXPENSES; ADVANCES ON COVENANTS; ATTORNEYS' FEES; COLLECTION COSTS.** If Trustor breaches any covenant in this Security Instrument, Trustor agrees to pay all expenses Lender incurs in performing such covenants (including but not limited to advances and expenses described in the DEED OF TRUST COVENANTS section) or protecting its security interest in the Property. Such expenses include, but are not limited to, fees incurred for inspecting, preserving, or otherwise protecting the Property and Lender's security interest. These expenses are payable on demand and will bear interest from the date of payment until paid in full at the highest rate of interest in effect as provided in the terms of the Secured Debt. Trustor agrees to pay all costs and expenses incurred by Lender in collecting, enforcing or protecting Lender's rights and remedies under this Security Instrument. This amount may include, but is not limited to, attorneys' fees, court costs, and other legal expenses. To the extent permitted by the United States Bankruptcy Code, Trustor agrees to pay the reasonable attorneys' fees Lender incurs to collect the Secured Debt as awarded by any court exercising jurisdiction under the Bankruptcy Code. This Security Instrument shall remain in effect until released. Trustor agrees to pay for any recordation costs of such release.

11. **ENVIRONMENTAL LAWS AND HAZARDOUS SUBSTANCES.** As used in this section, (1) Environmental Law means, without limitation, the Comprehensive Environmental Response, Compensation and Liability Act (CERCLA, 42 U.S.C. 9601 et seq.), and all other federal, state and local laws, regulations, ordinances, court orders, attorney general opinions or interpretive letters concerning the public health, safety, welfare, environment or a hazardous substance; and (2) Hazardous Substance means any toxic, radioactive or hazardous material, waste, pollutant or contaminant which has characteristics which render the substance dangerous or potentially dangerous to the public health, safety, welfare or environment. The term includes, without limitation, any substances defined as "hazardous material," "toxic substances," "hazardous waste" or "hazardous substance" under any Environmental Law.

Trustor represents, warrants and agrees that:
   A. Except as previously disclosed and acknowledged in writing to Lender, no Hazardous Substance is or will be located, stored or released on or in the Property. This restriction does not apply to small quantities of Hazardous Substances that are generally recognized to be appropriate for the normal use and maintenance of the Property.
   B. Except as previously disclosed and acknowledged in writing to Lender, Trustor and every tenant have been, are, and shall remain in full compliance with any applicable Environmental Law.
   C. Trustor shall immediately notify Lender if a release or threatened release of a Hazardous Substance occurs on, under or about the Property or there is a violation of any Environmental Law concerning the Property. In such an event, Trustor shall take all necessary remedial action in accordance with any Environmental Law.
   D. Trustor shall immediately notify Lender in writing as soon as Trustor has reason to believe there is any pending or threatened investigation, claim, or proceeding relating to the release or threatened release of any Hazardous Substance or the violation of any Environmental Law.

12. **ESCROW FOR TAXES AND INSURANCE.** Unless otherwise provided in a separate agreement, Trustor will not be required to pay to Lender funds for taxes and insurance in escrow.

13. **JOINT AND INDIVIDUAL LIABILITY; CO-SIGNERS; SUCCESSORS AND ASSIGNS BOUND.** All duties under this Security Instrument are joint and individual. If Trustor signs this Security Instrument but does not sign an evidence of debt, Trustor does so only to mortgage Trustor's interest in the Property to secure payment of the Secured Debt and Trustor does not agree to be personally liable on the Secured Debt. The duties and benefits of this Security Instrument shall bind and benefit the successors and assigns of Trustor and Lender.



**14. SEVERABILITY; INTERPRETATION.** This Security Instrument is complete and fully integrated. This Security Instrument may not be amended or modified by oral agreement. Any section in this Security Instrument, attachments, or any agreement related to the Secured Debt that conflicts with applicable law will not be effective, unless that law expressly or impliedly permits the variations by written agreement. If any section of this Security Instrument cannot be enforced according to its terms, that section will be severed and will not affect the enforceability of the remainder of this Security Instrument. Whenever used, the singular shall include the plural and the plural the singular. The captions and headings of the sections of this Security Instrument are for convenience only and are not to be used to interpret or define the terms of this Security Instrument. Time is of the essence in this Security Instrument.

**15. SUCCESSOR TRUSTEE.** Lender, at Lender's option, may from time to time remove Trustee and appoint a successor trustee without any other formality than the designation in writing. The successor trustee, without conveyance of the Property, shall succeed to all the title, power and duties conferred upon Trustee by this Security Instrument and applicable law.

**16. NOTICE.** Unless otherwise required by law, any notice shall be given by delivering it or by mailing it by first class mail to the appropriate party's address on page 1 of this Security Instrument, or to any other address designated in writing. Notice to one trustor will be deemed to be notice to all trustors. Lender and Trustor request that copies of any notice of default or notice of sale under a superior security instrument be sent to Lender and Trustor at the addresses listed in the DATE AND PARTIES section.

**17. WAIVERS.** Except to the extent prohibited by law, Trustor waives all appraisement or marshalling of assets relating to the Property.

**18. SPOUSE'S SEPARATE PROPERTY.** Any Trustor who is a married person expressly agrees that recourse may be had against his or her separate property.

**19. LINE OF CREDIT.** The Secured Debt includes a revolving line of credit. Although the Secured Debt may be reduced to a zero balance, this Security Instrument will remain in effect until released.

**20. APPLICABLE LAW.** This Security Instrument is governed by the laws as agreed to in the Secured Debt, except to the extent required by the laws of the jurisdiction where the Property is located, and applicable federal laws and regulations.

**21. RIDERS.** The covenants and agreements of each of the riders checked below are incorporated into and supplement and amend the terms of this Security Instrument. [Check all applicable boxes]
☐ Assignment of Leases and Rents  ☐ Other .......................................................................

**22.** ☐ **ADDITIONAL TERMS.**

**23. REQUEST FOR NOTICE.** In accordance with Section 2924b, Civil Code, request is hereby made that a copy of any notice of default and a copy of any notice of sale under the deed of trust (or mortgage) recorded ........................................ , ................. , in book ................................................................. page ......................................... , records of ....................................................................................... County, (or filed for record with recorder's serial number .................................... , ............................................................... County) California, executed by .............................................................................................................................................................. .............................................................................................................. as trustor (or mortgagor) in which .................................................................................... , is named as beneficiary (or mortgagee) and ............................................................................................................................... as trustee be mailed to:
Name ............................................................................................................................................. at
Address .......................................................................................................................................... .
NOTICE: A copy of any notice of default and of any notice   **Signature** on behalf of the requester named above:
of sale will be sent only to the address contained in this
recorded request. If your address changes, a new request
must be recorded.                                               Signature .................................................................
(Include the requester's name, by the signer, among those acknowledging below, or use a separate acknowledgment form.)

© 1994 Bankers Systems, Inc., St. Cloud, MN  Form OCP-REDT-CA 5/20/2005

-C465(CA) (0508)

**SIGNATURES:** By signing below, Trustor agrees to the terms and covenants contained in this Security Instrument and in any attachments. Trustor also acknowledges receipt of a copy of this Security Instrument on the date stated on page 1.

(Signature)   **MICHAEL A. FARIA**        (Date) 10·9·06

(Signature)   **NANNETTE M. FARIA**        (Date) 10·9·06

**ACKNOWLEDGMENT:**
STATE OF *California* ,
COUNTY OF *San Joaquin* } ss.
On this *9th* day of *OCTOBER, 2006* before me *ESTHER VEGA*
a notary public, personally appeared
*MICHAEL A. FARIA AND NANNETTE M. FARIA*

personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.
WITNESS my hand and official seal.

Signature .................
Name (typed or printed) *ESTHER VEGA*

My commission expires: *January 15, 2008*

ESTHER VEGA
Commission (Seal) 1463060
Notary Public - California
San Joaquin County
My Comm. Expires Jan 15, 2008

---

### REQUEST FOR FULL RECONVEYANCE

**To Trustee:** The undersigned is the holder of the note or notes secured by this Deed of Trust, which was recorded in the office of the Recorder of ............................................................. County, State of California, in book ........................ , page ........................ of official records. Said note or notes, together with all other indebtedness secured by this Deed of Trust, have been paid in full. You are hereby directed to cancel said note or notes and this Deed of Trust, which are delivered hereby, and to reconvey, without warranty, all the estate now held by you under this Deed of Trust to the person or persons legally entitled thereto.
Dated: ...............................................        ...............................................

Assessor's Identification Number ...............................................

**CALIFORNIA ALL-PURPOSE ACKNOWLEDGMENT**

State of California

County of _San Joaquin_ } ss.

On _October 9, 2006_ before me, _Esther Vega, Notary Public_
      Date                                    Name and Title of Officer (e.g., "Jane Doe, Notary Public")

personally appeared _Michael A. Faria and Nannette M. Faria_
                                              Name(s) of Signer(s)

---

**ESTHER VEGA**
Commission # 1463060
Notary Public - California
San Joaquin County
My Comm. Expires Jan 15, 2008

☐ personally known to me
☐ proved to me on the basis of satisfactory evidence

to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal.

_____
Signature of Notary Public

--------------- **OPTIONAL** ---------------
*Though the information below is not required by law, it may prove valuable to persons relying on the document and could prevent fraudulent removal and reattachment of this form to another document.*

**Description of Attached Document**

Title or Type of Document: _____

Document Date: _____ Number of Pages: _____

Signer(s) Other Than Named Above: _____

**Capacity(ies) Claimed by Signer**

Signer's Name: _____

☐ Individual
☐ Corporate Officer — Title(s): _____
☐ Partner — ☐ Limited ☐ General
☐ Attorney-in-Fact
☐ Trustee
☐ Guardian or Conservator
☐ Other: _____

Signer Is Representing: _____

RIGHT THUMBPRINT
OF SIGNER
Top of thumb here

© 1999 National Notary Association • 9350 De Soto Ave., P.O. Box 2402 • Chatsworth, CA 91313-2402 • www.nationalnotary.org     Prod. No. 5907     Reorder: Call Toll-Free 1-800-876-6827

# SIGNATURE ADDENDUM TO SECURITY INSTRUMENT

Definition: "Security Instrument." The Deed of Trust, Mortgage, Trust Deed, Deed to Secure Debt or Security Deed given to secure the debt to the Lender of the same date.

Mortgagor(s)/Borrower(s) on Security Instrument:
**MICHAEL A. FARIA**
**NANNETTE M. FARIA**

Property Address:
**2315 PICCARDO CIR**
**STOCKTON California 95207**

Lender:     National City Bank

Lender Reference Number:   **0004911887**

**ADDITIONAL SIGNATURES:** By signing below, Grantor(s) / Mortgagor(s) / Trustor(s) / Settlor(s) agrees to the terms and covenants contained in the Security Instrument and in any attachments. Grantors(s) / Mortgagor(s) / Trustor(s) / Settlor(s) also acknowledges receipt of a copy of the Security Instrument.

NON-APPLICANT SPOUSE, OR NON-APPLICANT
INDIVIDUAL WITH OWNERSHIP INTEREST IN PROPERTY: ADDITIONAL BORROWERS

_____     10Oct06
                           Date

_____     10-9-06
                           Date

_____     _____
           Date                        Date

_____
           Date

**ACKNOWLEDGMENT:**
STATE OF _California_                    COUNTY OF _San Joaquin_ }ss.
On this _9th_ day of _OCTOBER, 200_ before me _Esther Vega_
a notary public, personally appeared
_Michael A. Faria_ and _Nannette M. Faria_
_____ personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/here/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.
WITNESS my hand and official seal:

Signature _____
Name (typed or printed) _ESTHER VEGA_
My commission expires: _January 15, 2008_

ESTHER VEGA
Commission # 1463060
Notary Public - California
San Joaquin County
My Comm. Expires Jan 15, 2008

SIGNADD1 (4/2006)

National City ®

(CA – Notice to Cosigner required on all consumer credit contracts unless cosigners are married. Must be signed prior to signing note.)

---

## CALIFORNIA NOTICE TO COSIGNER

### NOTICE TO COSIGNER (Traduccion en Ingles Se Requiere Por La Ley)

You are being asked to guarantee this debt. Think carefully before you do. If the borrower doesn't pay the debt, you will have to. Be sure you can afford to pay if you have to, and that you want to accept this responsibility.

You may have to pay up to the full amount of the debt if the borrower does not pay. You may also have to pay late fees or collections costs, which increase this amount.

The creditor can collect this debt from you without first trying to collect from the borrower. The creditor can use the same collection methods against you that can be used against the borrower, such as suing you, garnishing your wages, etc. If this debt is ever in default, that fact may become a part of your credit record.

This notice is not the contract that makes you liable for the debt.

### AVISO PARA EL FIADOR (Spanish Translation Required by Law)

Se le esta pidiendo que garantice esta deuda. Pienselo con cuidado antes de ponerse de acuerdo. Si la persona que ha pedido este prestamo no paga la deuda, usted tendra que pagarla. Este seguro de que usted podra pagar si sea obligado a pagarla y de que usted desea aceptar la responsabilidad.

Si la persona que ha pedido el prestamo no paga la deuda, es posible que usted tenga que pagar la suma total de la deuda, mas los cargos por tardarse en el pago o el costo de cobranza, lo cual aumenta el total de esta suma.

El acreedor (financiero) puedce cobrarle a usted sin, primeramente, tratar de cobrarle al deudor. Los mismos metodos de cobranza que pueden usarse contra el deudor, podran usarse contra usted, tales, como presentar una demanda en corte, quitar parte de su sueldo, etc. Si alguna vez no se cumpla con la obligacion de pagar esta deuda, se puede incluir esa informacion en la historia de credito de usted.

Este aviso no es el contrato mismo en que se le echa a usted la responsabilidad de la deuda.

---

**MICHAEL A. FARIA**
Type or Print Name of Debtor

X _____
Debtor's Signature

_10 Oct-06_
Date

**NANNETTE M. FARIA**
Type or Print Name of Debtor

X _Nannette M. Faria_
Debtor's Signature

_10-9-06_
Date

_____
Type or Print Name of Debtor

X _____
Debtor's Signature

_____
Date

_____
Type or Print Name of Debtor

X _____
Debtor's Signature

_____
Date

CAANC1 (12/03)

**Order No. 12474955-707-CG**

## SCHEDULE C

### LEGAL DESCRIPTION

All that certain real property in the City of Stockton, County of San Joaquin, State of California, described as follows:

Lot 8, as shown upon Map entitled, **Tract No. 1323 Venetian Bridges Unit No. 1,** filed for record April 25, 1978 in Book 23 of Maps and Plats, Page 50, San Joaquin County Records.

Except therefrom all oil, gas, minerals and other hydrocarbon substances lying below a depth of 500 feet beneath the surface of said land, without the right of surface entry as reserved in Deed by Schmitz Development Inc., recorded August 2, 1978 Series No. 7957751, San Joaquin County Records.

# EXHIBIT "C"

## UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF CALIFORNIA

Name(s) of Debtor(s): Michael Faria & Nannette Faria          Case No.   14-21631


Last four digits of Soc. Sec. No.: 4492
Last four digits of Soc. Sec. No.: 6922

### SECOND AMENDED
### CHAPTER 13 PLAN

YOU WILL BE NOTIFIED OF THE DATE, TIME, AND LOCATION OF A HEARING TO CONFIRM THIS PLAN AND OF THE DEADLINE TO OBJECT TO ITS CONFIRMATION.  IN THE ABSENCE OF A TIMELY WRITTEN OBJECTION, THE PLAN MAY BE CONFIRMED WITHOUT A HEARING.  IT WILL BE EFFECTIVE UPON ITS CONFIRMATION.

#### Section 1. Plan Payments and Plan Duration

**1.01.    Monthly plan payments.** To complete this plan, Debtor shall submit to the supervision and control of Trustee on a monthly basis the sum of $ 3,900_____ from future earnings.  This monthly plan payment is subject to adjustment pursuant to section 2.08(b)(4) below and it must be received by Trustee not later than the 25th day of each month beginning the month after the order for relief under chapter 13.  The monthly plan payment includes all post-petition charges due on Class 1 secured claims and adequate protection payments due on Class 2 secured claims.

**1.02.    Other payments.** In addition to the submission of future earnings, Debtor will make payment(s) derived from property of the bankruptcy estate, property of Debtor, or from other sources, as follows: _____
_____.

**1.03.    Duration of payments.** The monthly plan payments will continue for __60__ months unless all allowed unsecured claims are paid in full within a shorter period of time.  If necessary to complete the plan, monthly payments may continue for an additional 6 months, but in no event shall monthly payments continue for more than 60 months.

#### Section 2. Claims and Expenses

A.  Proofs of Claim

**2.01.** With the exception of the payments required by sections 2.02, 2.03, 2.11, and 3.01, a claim will not be paid pursuant to this plan unless a timely proof of claim is filed by or on behalf of a creditor, including a secured creditor.

**2.02.** Monthly contract installments and other charges falling due after the filing of the case shall be paid to Class 1 and 4 claim holders and to the nondebtor party to assumed executory contracts/unexpired leases whether or not the plan is confirmed or proofs of claim have been filed.

**2.03.** Post-petition amounts due on account of a domestic support obligation, a loan from retirement or thrift savings plan, or an executory contract/unexpired lease being assumed, shall be paid by Debtor directly to the person entitled to such payments whether or not the plan is confirmed or a proof of claim has been filed.

**2.04.** The proof of claim, not this plan or the schedules, shall determine the amount and classification of a claim unless the court's disposition of a claim objection, valuation motion, or lien avoidance motion affects the amount or classification of the claim.

B.  Administrative Expenses

**2.05.    Trustee's fees.** Pursuant to 28 U.S.C. § 586(e), Trustee shall receive up to 10% of plan payments, whether made before or after confirmation, but excluding direct payments on Class 4 claims.

**2.06.    Debtor's attorney's fees.** Debtor's attorney of record was paid $ 2200_____ prior to the filing of the case. Subject to prior court approval, additional fees of $ 0_____ shall be paid through this plan. Debtor's attorney will seek the court's approval by [**choose one**]: ☒ complying with Local Bankruptcy Rule 2016-1(c); or ☐ filing and serving a motion in accordance with 11 U.S.C. §§ 329 and 330, Fed. R. Bankr. P. 2002, 2016, and 2017.

**2.07. Administrative expenses.** In accordance with sections 4.02 and 4.03 below, $ _____ of each monthly plan payment shall be paid on account of: (a) compensation due a former chapter 7 trustee; (b) approved administrative expenses; and (c) approved additional attorney's fees. Approved administrative expenses shall be paid in full through this plan except to the extent a claimant agrees otherwise or 11 U.S.C. § 1326(b)(3)(B) is applicable.

C. Secured Claims

**2.08. Class 1 includes all delinquent secured claims that mature after the completion of this plan.**

**(a) Cure of arrears.** All arrears on Class 1 claims shall be paid in full by Trustee. The cure will be paid in the equal monthly installments specified in the table below as the "arrearage dividend."

(1) The cure shall include interest unless a "0%" rate is specified below. If the provision for interest is left blank, interest will accrue at the rate of 10%.

(2) The arrearage dividend must be applied by the Class I creditor to the arrears. If this plan provides for interest on the arrears, the arrearage dividend shall be applied first to such interest, then to the arrears.

**(b) Post-petition payments.** Trustee shall maintain all payments falling due after the filing of the case to the holder of each Class 1 claim.

(1) If Debtor makes a partial plan payment that is insufficient to satisfy such post-petition payments, distributions will be made in the order such claims are listed below.

(2) Trustee will not make a partial distribution on account of a post-petition payment.

(3) If Debtor makes a partial plan payment, or if it is not paid on time, and Trustee is unable to make timely a post-petition payment, Debtor's cure of this default shall include any late charge.

(4) The automatic stay is modified to permit the holders of Class 1 claims to send statements, impound, and escrow notices, and notices concerning interest rate adjustments or the assessment of fees and costs to Debtor. However, Trustee will not make post-petition payment adjustments or pay post-petition fees, charges, or assessments until they are demanded in accordance with Fed. R. Bankr. P. 3002.1.

(i) If the holder of a Class 1 claim gives Debtor and Trustee notice of a payment change in accordance with Fed. R. Bankr. P. 3002.1(b), Debtor shall adjust the plan payment accordingly.

(ii) If the holder of a Class 1 claim gives Debtor and Trustee notice of post-petition fees, expenses, and charges in accordance with Fed. R. Bankr. P. 3002.1(c), Debtor shall modify this plan if Debtor wishes to provide for such fees, expenses, and charges.

(5) Post-petition payments made by Trustee and received by the holder of a Class 1 claim shall be applied as if the claim were current and no arrearage existed on the date the case was filed.

**(c) No claim modification.** Each Class 1 creditor shall retain its lien. Other than to cure of any arrearage, this plan does not modify Class 1 claims.

| Class 1 Creditor's Name/ Collateral Description | Amount of Arrears | Interest Rate on Arrears | Arrearage Dividend | Monthly Contract Installment Amount |
|---|---|---|---|---|
| 1. BSI Financial/Piccardo Residence | 45587 | 0 | 840 | 1382 |
| 2. PNC Bank/Piccardo Residence | 11504 | 0 | 250 | 589 |
| 3. | | | | |
| | | Totals: $ | 1090 | $ 1971 |

**2.09. Class 2 includes all secured claims that are modified by this plan, or that have matured or will mature before the plan is completed.**

**(a) Payment of claim.** Trustee shall pay each Class 2 claim the equal monthly amount specified below as the monthly dividend. Subject to section 2.09(c), Class 2 claims will be paid in full. The payment of a Class 2 claim shall include interest unless a "0%" rate is specified below. If no rate is specified, a 10% rate will be imputed.

**(b) Adequate protection payments.** Prior to confirmation, Trustee shall pay on account of each allowed Class 2 claim secured by a purchase money security interest in personal property an adequate protection payment if required by section 1326(a)(1)(C). The adequate protection payment shall equal the monthly dividend. Adequate protection payments shall be disbursed by Trustee in connection with his customary month-end disbursement cycle beginning the month after the case was filed. If a Class 2 claimant is paid an adequate protection payment, that claimant shall not be paid a monthly dividend for the same month.

**(c) Claim amount.** The amount of a Class 2 claim is determined by applicable nonbankruptcy law. However, subject to the two limitations below, Debtor may reduce the claim to the value of the collateral securing the claim by filing, serving, setting for hearing, and prevailing on a motion to determine the value of that collateral. If this plan proposes to reduce a claim based upon the value of its collateral, the failure to move to value that collateral in conjunction with plan confirmation may result in the denial of confirmation.

**(1)** Debtor is prohibited from reducing a claim if the claim holder has a purchase money security interest and the claim either was incurred within 910 days of the filing of the case and is secured by a motor vehicle acquired for the personal use of Debtor, or was incurred within 1-year of the filing of the case and is secured by any other thing of value.

**(2)** Debtor is prohibited from modifying the rights of a holder of a claim secured only by a security interest in real property that is Debtor's principal residence.

**(d) Lien retention.** Each Class 2 creditor shall retain its existing lien until completion of the plan and, unless not required by Bankruptcy Court, entry of Debtor's discharge.

| Class 2 Creditor's name and description of collateral | Purchase money security interest in personal property? YES/NO | Amount claimed by creditor | Value of creditor's interest in its collateral | Interest Rate | Monthly Dividend |
|---|---|---|---|---|---|
| A. Class 2 claims not reduced based on value of collateral | | | | | |
| 1. | | | | | |
| 2. | | | | | |
| B. Class 2 claims reduced based on value of collateral | | | | | |
| 1. | | | | | |
| 2. | | | | | |
| C. Class 2 claims reduced to $0 based on value of collateral | | | | | |
| 1. | | | $0.00 | 0 | $0.00 |
| 2. | | | $0.00 | 0 | $0.00 |
| | | | | Total $ | |

**2.10. Class 3 includes all secured claims satisfied by the surrender of collateral.** Upon confirmation of the plan, all bankruptcy stays are modified to allow a Class 3 secured claim holder to exercise its rights against its collateral.

| Class 3 Creditor's Name/Collateral Description | Estimated Deficiency | Is Deficiency a Priority Claim? YES/NO |
|---|---|---|
| 1. Bayview Loan Servicing/Argonaut Way | 0 | N |
| 2. | | |

**2.11. Class 4 includes all secured claims paid directly by Debtor or third party.** Class 4 claims mature after the completion of this plan, are not in default, and are not modified by this plan. These claims shall be paid by Debtor or a third person whether or not the plan is confirmed. Upon confirmation of the plan, all bankruptcy stays are modified to allow the holder of a Class 4 secured claim to exercise its rights against its collateral and any nondebtor in the event of a default under applicable law or contract.

| Class 4 Creditor's Name/Collateral Description | Monthly Contract Installment | Person Making Payment |
|---|---|---|
| 1. | | |
| 2. | | |

**2.12.** Secured claims not listed as Class 1, 2, 3, or 4 claims are not provided for by this plan. The failure to provide for a secured claim in one of these classes may be cause to terminate the automatic stay.

### D. Unsecured Claims

**2.13. Class 5 consists of unsecured claims entitled to priority** pursuant to 11 U.S.C. § 507. These claims will be paid in full except to the extent the claim holder has agreed to accept less or 11 U.S.C. § 1322(a)(4) is applicable. When section 1322(a)(4) is applicable to a claim, the claim holder and the treatment of the claim shall be specified in the Additional Provisions. The failure to provide the foregoing treatment for a priority claim is a breach of this plan.

| Class 5 Creditor's Name | Type of Priority | Claim Amount |
|---|---|---|
| 1. | | |
| 2. | | |
| 3. | | |

**2.14. Class 6 includes designated unsecured claims,** such as co-signed unsecured debts, that will be paid in full even though all other nonpriority unsecured claims may not be paid in full.

| Class 6 Creditor's Name | Reason for Special Treatment | Claim Amount |
|---|---|---|
| 1. | | |
| 2. | | |

**2.15. Class 7 consists of all other unsecured claims** not listed as Class 5 or 6 claims. These claims will receive no less than a 100 % dividend. These claims, including the under-collateralized portion of secured claims not entitled to priority, total approximately $ 3604 .

### Section 3. Executory Contracts And Unexpired Leases

**3.01.** Debtor assumes the executory contracts and unexpired leases listed below. Debtor shall pay directly to the other party to the executory contract or unexpired lease, before and after confirmation, all post-petition payments. Unless a different treatment is required by 11 U.S.C. § 365(b)(1) and is set out in the Additional Provisions, pre-petition arrears shall be paid in full. The monthly dividend payable on account of those arrears is specified in the table below.

**3.02.** Any executory contract or unexpired lease not listed in the table below is rejected. Upon confirmation of the plan, all bankruptcy stays are modified to allow the nondebtor party to an unexpired lease to obtain possession of leased property, to dispose of it under applicable law, and to exercise its rights against any nondebtor in the event of a default under applicable law or contract.

| Name of Other Party to Executory Contract/ Unexpired Lease | Regular Payment | Pre-petition Arrears | Arrearage Dividend |
|---|---|---|---|
| 1. Fair Realty and Development | 1890 | 0 | 0 |
| 2. | | | |
| | | Total $ | 0 |

### Section 4. Payment of Claims and Order of Distribution

**4.01.** After confirmation, payments to holders of allowed claims and approved expenses will be made monthly.

**4.02. Distribution of plan payment.** Debtor's monthly plan payment must total: **(a)** Trustee's fees; **(b)** post-petition payments due on Class 1 claims; **(c)** the monthly dividend specified in section 2.07 for administrative expenses; and **(d)** the monthly dividends payable on account of Class 1 arrearage claims, Class 2 claims, and executory contract and unexpired lease arrearage claims. To the extent plan payments are not needed to pay the foregoing dividends, they shall be paid pro rata, first

to Class 5 priority claims, second to Class 6 unsecured claims, and third to Class 7 unsecured claims. Over the plan's duration, these distributions must equal the total dividends required by sections 2.05, 2.07, 2.08, 2.09, 2.13, 2.14, and 2.15.

**4.03.    Priority of payment among administrative expenses.** The portion of the monthly plan payment allocated in section 2.07 for administrative expenses, shall be distributed first to any former chapter 7 trustee up to the monthly amount required by section 1326(b)(3)B), and second to holders of approved administrative expenses on a pro rata basis.

### Section 5. Miscellaneous Provisions

**5.01.    Vesting of property.** Property of the estate [**choose one**] shall ☒ shall not ☐ revest in Debtor upon confirmation of the plan. In the event the case is converted to a case under Chapters 7, 11, or 12 of the Bankruptcy Code or is dismissed, the property of the estate shall be determined in accordance with applicable law.

**5.02.    Debtor's duties.** In addition to the duties imposed upon Debtor by the Bankruptcy Code, the Bankruptcy Rules, and applicable nonbankruptcy law, the court's Local Bankruptcy Rules impose additional duties on Debtor, including without limitation, obtaining prior court authorization prior to transferring property or incurring additional debt, maintaining insurance, providing Trustee copies of tax returns, W-2 forms, 1099 forms, and quarterly financial information regarding Debtor's business or financial affairs, and providing Trustee not later than the 14 days after the filing of the case with the Domestic Support Obligation Checklist for each domestic support obligation and a Class 1 Worksheet and Authorization to Release Information for each Class 1 claim.

**5.03.    Remedies upon default.** If Debtor defaults under this plan, or if the plan will not be completed within six months of its stated term, not to exceed 60 months, Trustee or any other party in interest may request appropriate relief by filing a motion and setting it for hearing pursuant to Local Bankruptcy Rule 9014-1. This relief may consist of, without limitation, dismissal of the case, conversion of the case to chapter 7, or relief from the automatic stay to pursue rights against collateral. If the court terminates the automatic stay to permit a Class 1 or 2 secured claim holder to proceed against its collateral, unless the court orders otherwise, Trustee shall make no further payments on account of such secured claim and any portion of such secured claim not previously satisfied under this plan shall be satisfied as a Class 3 claim. Any deficiency remaining after the creditor's disposition of its collateral shall be satisfied as a Class 7 unsecured claim subject to the timely filing of a proof of claim.

### Section 6. Additional Provisions

This plan is the court's standard plan form. Other than to insert text into designated spaces, expand tables to include additional claims, or change the title to indicate the date of the plan or that the plan is a modified plan, the preprinted text of this form has not been altered. In the event there is an alteration, it will be given no effect. The signatures below are certifications that the standard plan form has not been altered.

Despite the foregoing, as long as consistent with the Bankruptcy Code, Debtor may propose additional provisions that modify the preprinted text. All additional provisions shall be on a separate piece of paper appended at the end of this plan. Each additional provision shall be identified by a section number beginning with section 6.01 and indicate which section(s) of the standard plan form have been modified.

Additional Provisions [**choose one**] are ☐ are not ☒ appended to this plan.

Dated: 7/7/2014

/s/Michael Faria
Debtor

/s/Nannette Faria
Debtor

Dated: 7/7/2014

/s/Anthony R. Sales
Debtor's Attorney

# EXHIBIT "D"

# UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF CALIFORNIA

Name(s) of Debtor(s): FARIA, Michael A. and
FARIA, Nannette M.,

Case No.   14-21631-D-13G

Last four digits of Soc. Sec. No.: 4492
Last four digits of Soc. Sec. No.: 6922

## FIRST MODIFIED
## CHAPTER 13 PLAN

YOU WILL BE NOTIFIED OF THE DATE, TIME, AND LOCATION OF A HEARING TO CONFIRM THIS PLAN AND OF THE DEADLINE TO OBJECT TO ITS CONFIRMATION.  IN THE ABSENCE OF A TIMELY WRITTEN OBJECTION, THE PLAN MAY BE CONFIRMED WITHOUT A HEARING.  IT WILL BE EFFECTIVE UPON ITS CONFIRMATION.

### Section 1. Plan Payments and Plan Duration

**1.01.    Monthly plan payments**.  To complete this plan, Debtor shall submit to the supervision and control of Trustee on a monthly basis the sum of $ See 6.01____  from future earnings.  This monthly plan payment is subject to adjustment pursuant to section 2.08(b)(4) below and it must be received by Trustee not later than the 25th day of each month beginning the month after the order for relief under chapter 13.  The monthly plan payment includes all post-petition charges due on Class 1 secured claims and adequate protection payments due on Class 2 secured claims.

**1.02.    Other payments.**  In addition to the submission of future earnings, Debtor will make payment(s) derived from property of the bankruptcy estate, property of Debtor, or from other sources, as follows: _____
_____.

**1.03.    Duration of payments.**  The monthly plan payments will continue for __27__ months unless all allowed unsecured claims are paid in full within a shorter period of time.  If necessary to complete the plan, monthly payments may continue for an additional 6 months, but in no event shall monthly payments continue for more than 60 months.

### Section 2. Claims and Expenses
A. Proofs of Claim

**2.01.**    With the exception of the payments required by sections 2.02, 2.03, 2.11, and 3.01, a claim will not be paid pursuant to this plan unless a timely proof of claim is filed by or on behalf of a creditor, including a secured creditor.

**2.02.**    Monthly contract installments and other charges falling due after the filing of the case shall be paid to Class 1 and 4 claim holders and to the nondebtor party to assumed executory contracts/unexpired leases whether or not the plan is confirmed or proofs of claim have been filed.

**2.03.**    Post-petition amounts due on account of a domestic support obligation, a loan from retirement or thrift savings plan, or an executory contract/unexpired lease being assumed, shall be paid by Debtor directly to the person entitled to such payments whether or not the plan is confirmed or a proof of claim has been filed.

**2.04.**    The proof of claim, not this plan or the schedules, shall determine the amount and classification of a claim unless the court's disposition of a claim objection, valuation motion, or lien avoidance motion affects the amount or classification of the claim.

B. Administrative Expenses

**2.05.    Trustee's fees.**  Pursuant to 28 U.S.C. § 586(e), Trustee shall receive up to 10% of plan payments, whether made before or after confirmation, but excluding direct payments on Class 4 claims.

**2.06.    Debtor's attorney's fees.**  Debtor's attorney of record was paid $ See 6.02____  prior to the filing of the case. Subject to prior court approval, additional fees of $_____ shall be paid through this plan.  Debtor's attorney will seek the court's approval by [**choose one**]:☐ complying with Local Bankruptcy Rule 2016-1(c); or ☐ filing and serving a motion in accordance with 11 U.S.C. §§ 329 and 330, Fed. R. Bankr. P. 2002, 2016, and 2017.

**2.07.    Administrative expenses.** In accordance with sections 4.02 and 4.03 below, $ _____ of each monthly plan payment shall be paid on account of: (a) compensation due a former chapter 7 trustee; (b) approved administrative expenses; and (c) approved additional attorney's fees.  Approved administrative expenses shall be paid in full through this plan except to the extent a claimant agrees otherwise or 11 U.S.C. § 1326(b)(3)(B) is applicable.

C.  Secured Claims

**2.08.    Class 1 includes all delinquent secured claims that mature after the completion of this plan.**

**(a) Cure of arrears.**  All arrears on Class 1 claims shall be paid in full by Trustee.  The cure will be paid in the equal monthly installments specified in the table below as the "arrearage dividend."

**(1)** The cure shall include interest unless a "0%" rate is specified below.  If the provision for interest is left blank, interest will accrue at the rate of 10%.

**(2)** The arrearage dividend must be applied by the Class I creditor to the arrears.  If this plan provides for interest on the arrears, the arrearage dividend shall be applied first to such interest, then to the arrears.

**(b) Post-petition payments.**  Trustee shall maintain all payments falling due after the filing of the case to the holder of each Class 1 claim.

**(1)** If Debtor makes a partial plan payment that is insufficient to satisfy such post-petition payments, distributions will be made in the order such claims are listed below.

**(2)** Trustee will not make a partial distribution on account of a post-petition payment.

**(3)** If Debtor makes a partial plan payment, or if it is not paid on time, and Trustee is unable to make timely a post-petition payment, Debtor's cure of this default shall include any late charge.

**(4)** The automatic stay is modified to permit the holders of Class 1 claims to send statements, impound, and escrow notices, and notices concerning interest rate adjustments or the assessment of fees and costs to Debtor.  However, Trustee will not make post-petition payment adjustments or pay post-petition fees, charges, or assessments until they are demanded in accordance with Fed. R. Bankr. P. 3002.1.

**(i)**  If the holder of a Class 1 claim gives Debtor and Trustee notice of a payment change in accordance with Fed. R. Bankr. P. 3002.1(b), Debtor shall adjust the plan payment accordingly.

**(ii)** If the holder of a Class 1 claim gives Debtor and Trustee notice of post-petition fees, expenses, and charges in accordance with Fed. R. Bankr. P. 3002.1(c), Debtor shall modify this plan if Debtor wishes to provide for such fees, expenses, and charges.

**(5)** Post-petition payments made by Trustee and received by the holder of a Class 1 claim shall be applied as if the claim were current and no arrearage existed on the date the case was filed.

**(c) No claim modification.**  Each Class 1 creditor shall retain its lien.  Other than to cure of any arrearage, this plan does not modify Class 1 claims.

| Class 1 Creditor's Name/<br>Collateral Description | Amount of Arrears | Interest Rate<br>on Arrears | Arrearage<br>Dividend | Monthly Contract<br>Installment Amount |
|---|---|---|---|---|
| 1.   Bayview Loan Svg (1st DOT residence) | $17,600.00 | -0- | | |
| 2.   PNC Bank, N.A.    (2nd DOT residence) | $720.00 | -0- | | |
| 3. | | | | |
| | | Totals:  $ | | $ |

**2.09.    Class 2 includes all secured claims that are modified by this plan, or that have matured or will mature before the plan is completed.**

**(a) Payment of claim.**  Trustee shall pay each Class 2 claim the equal monthly amount specified below as the monthly dividend.  Subject to section 2.09(c), Class 2 claims will be paid in full.  The payment of a Class 2 claim shall include interest unless a "0%" rate is specified below.  If no rate is specified, a 10% rate will be imputed.

**(b) Adequate protection payments.** Prior to confirmation, Trustee shall pay on account of each allowed Class 2 claim secured by a purchase money security interest in personal property an adequate protection payment if required by section 1326(a)(1)(C). The adequate protection payment shall equal the monthly dividend. Adequate protection payments shall be disbursed by Trustee in connection with his customary month-end disbursement cycle beginning the month after the case was filed. If a Class 2 claimant is paid an adequate protection payment, that claimant shall not be paid a monthly dividend for the same month.

**(c) Claim amount.** The amount of a Class 2 claim is determined by applicable nonbankruptcy law. However, subject to the two limitations below, Debtor may reduce the claim to the value of the collateral securing it by filing, serving, setting for hearing, and prevailing on a motion to determine the value of that collateral. If this plan proposes to reduce a claim based upon the value of its collateral, the failure to move to value that collateral in conjunction with plan confirmation may result in the denial of confirmation.

**(1)** Debtor is prohibited from reducing a claim if the claim holder has a purchase money security interest and the claim either was incurred within 910 days of the filing of the case and is secured by a motor vehicle acquired for the personal use of Debtor, or was incurred within 1-year of the filing of the case and is secured by any other thing of value.

**(2)** Debtor is prohibited from modifying the rights of a holder of a claim secured only by a security interest in real property that is Debtor's principal residence.

**(d) Lien retention.** Each Class 2 creditor shall retain its existing lien until completion of the plan and, unless not required by Bankruptcy Court, entry of Debtor's discharge.

| Class 2 Creditor's name and description of collateral | Purchase money security interest in personal property? YES/NO | Amount claimed by creditor | Value of creditor's interest in its collateral | Interest Rate | Monthly Dividend |
|---|---|---|---|---|---|
| A. Class 2 claims not reduced based on value of collateral | | | | | |
| 1. | | | | | |
| 2. | | | | | |
| B. Class 2 claims reduced based on value of collateral | | | | | |
| 1. | | | | | |
| 2. | | | | | |
| C. Class 2 claims reduced to $0 based on value of collateral | | | | | |
| 1. | | | $0.00 | 0 | $0.00 |
| 2. | | | $0.00 | 0 | $0.00 |
| | | | | Total $ | |

**2.10.    Class 3 includes all secured claims satisfied by the surrender of collateral.** Upon confirmation of the plan, all bankruptcy stays are modified to allow a Class 3 secured claim holder to exercise its rights against its collateral.

| Class 3 Creditor's Name/Collateral Description | | Estimated Deficiency | Is Deficiency a Priority Claim? YES/NO |
|---|---|---|---|
| 1. Bank of NY Mellon/Bayview Loan Servicing (1st DOT rental) | | -0- | N/A |
| 2. Real Time Resolutions, Inc. | (2nd DOT rental) | -0- | N/A |

**2.11.    Class 4 includes all secured claims paid directly by Debtor or third party.** Class 4 claims mature after the completion of this plan, are not in default, and are not modified by this plan. These claims shall be paid by Debtor or a third person whether or not the plan is confirmed. Upon confirmation of the plan, all bankruptcy stays are modified to allow the holder of a Class 4 secured claim to exercise its rights against its collateral and any nondebtor in the event of a default under applicable law or contract.

| Class 4 Creditor's Name/Collateral Description | Monthly Contract Installment | Person Making Payment |
|---|---|---|
| 1. | | |
| 2. | | |

**2.12.** Secured claims not listed as Class 1, 2, 3, or 4 claims are not provided for by this plan. The failure to provide for a secured claim in one of these classes may be cause to terminate the automatic stay.

D. Unsecured Claims

**2.13. Class 5 consists of unsecured claims entitled to priority** pursuant to 11 U.S.C. § 507. These claims will be paid in full except to the extent the claim holder has agreed to accept less or 11 U.S.C. § 1322(a)(4) is applicable. When section 1322(a)(4) is applicable to a claim, the claim holder and the treatment of the claim shall be specified in the Additional Provisions. The failure to provide the foregoing treatment for a priority claim is a breach of this plan.

| Class 5 Creditor's Name | Type of Priority | Claim Amount |
|---|---|---|
| 1. | | |
| 2. | | |
| 3. | | |

**2.14. Class 6 includes designated unsecured claims**, such as co-signed unsecured debts, that will be paid in full even though all other nonpriority unsecured claims may not be paid in full.

| Class 6 Creditor's Name | Reason for Special Treatment | Claim Amount |
|---|---|---|
| 1. | | |
| 2. | | |

**2.15. Class 7 consists of all other unsecured claims** not listed as Class 5 or 6 claims. These claims will receive no less than a _100_ % dividend. These claims, including the under-collateralized portion of secured claims not entitled to priority, total approximately $ _2,139.98_ .

### Section 3. Executory Contracts And Unexpired Leases

**3.01.** Debtor assumes the executory contracts and unexpired leases listed below. Debtor shall pay directly to the other party to the executory contract or unexpired lease, before and after confirmation, all post-petition payments. Unless a different treatment is required by 11 U.S.C. § 365(b)(1) and is set out in the Additional Provisions, pre-petition arrears shall be paid in full. The monthly dividend payable on account of those arrears is specified in the table below.

**3.02.** Any executory contract or unexpired lease not listed in the table below is rejected. Upon confirmation of the plan, all bankruptcy stays are modified to allow the nondebtor party to an unexpired lease to obtain possession of leased property, to dispose of it under applicable law, and to exercise its rights against any nondebtor in the event of a default under applicable law or contract.

| Name of Other Party to Executory Contract/ Unexpired Lease | Regular Payment | Pre-petition Arrears | Arrearage Dividend |
|---|---|---|---|
| 1. | | | |
| 2. | | | |
| | | Total $ | |

### Section 4. Payment of Claims and Order of Distribution

**4.01.** After confirmation, payments to holders of allowed claims and approved expenses will be made monthly.

**4.02. Distribution of plan payment.** Debtor's monthly plan payment must total: **(a)** Trustee's fees; **(b)** post-petition payments due on Class 1 claims; **(c)** the monthly dividend specified in section 2.07 for administrative expenses; and **(d)** the monthly dividends payable on account of Class 1 arrearage claims, Class 2 claims, and executory contract and unexpired lease arrearage claims. To the extent plan payments are not needed to pay the foregoing dividends, they shall be paid pro rata, first

to Class 5 priority claims, second to Class 6 unsecured claims, and third to Class 7 unsecured claims. Over the plan's duration, these distributions must equal the total dividends required by sections 2.05, 2.07, 2.08, 2.09, 2.13, 2.14, and 2.15.

**4.03.    Priority of payment among administrative expenses.** The portion of the monthly plan payment allocated in section 2.07 for administrative expenses, shall be distributed first to any former chapter 7 trustee up to the monthly amount required by section 1326(b)(3)B), and second to holders of approved administrative expenses on a pro rata basis.

## Section 5.  Miscellaneous Provisions

**5.01.    Vesting of property.** Property of the estate [**choose one**] shall ☒ shall not ☐ revest in Debtor upon confirmation of the plan.  In the event the case is converted to a case under Chapters 7, 11, or 12 of the Bankruptcy Code or is dismissed, the property of the estate shall be determined in accordance with applicable law.

**5.02.    Debtor's duties.** In addition to the duties imposed upon Debtor by the Bankruptcy Code, the Bankruptcy Rules, and applicable nonbankruptcy law, the court's Local Bankruptcy Rules impose additional duties on Debtor, including without limitation, obtaining prior court authorization prior to transferring property or incurring additional debt, maintaining insurance, providing Trustee copies of tax returns, W-2 forms, 1099 forms, and quarterly financial information regarding Debtor's business or financial affairs, and providing Trustee not later than the 14 days after the filing of the case with the Domestic Support Obligation Checklist for each domestic support obligation and a Class 1 Worksheet and Authorization to Release Information for each Class 1 claim.

**5.03.    Remedies upon default.** If Debtor defaults under this plan, or if the plan will not be completed within six months of its stated term, not to exceed 60 months, Trustee or any other party in interest may request appropriate relief by filing a motion and setting it for hearing pursuant to Local Bankruptcy Rule 9014-1.  This relief may consist of, without limitation, dismissal of the case, conversion of the case to chapter 7, or relief from the automatic stay to pursue rights against collateral. If the court terminates the automatic stay to permit a Class 1 or 2 secured claim holder to proceed against its collateral, unless the court orders otherwise, Trustee shall make no further payments on account of such secured claim and any portion of such secured claim not previously satisfied under this plan shall be satisfied as a Class 3 claim.  Any deficiency remaining after the creditor's disposition of its collateral shall be satisfied as a Class 7 unsecured claim subject to the timely filing of a proof of claim.

## Section 6.  Additional Provisions

This plan is the court's standard plan form.  Other than to insert text into designated spaces, expand tables to include additional claims, or change the title to indicate the date of the plan or that the plan is a modified plan, the preprinted text of this form has not been altered.  In the event there is an alteration, it will be given no effect.  The signatures below are certifications that the standard plan form has not been altered.

Despite the foregoing, as long as consistent with the Bankruptcy Code, Debtor may propose additional provisions that modify the preprinted text.  All additional provisions shall be on a separate piece of paper appended at the end of this plan. Each additional provision shall be identified by a section number beginning with section 6.01and indicate which section(s) of the standard plan form have been modified.

Additional Provisions  [**choose one**] are ☒ are not ☐ appended to this plan.

Dated:  June 27, 2016                         /s/ MICHAEL A. FARIA
                                              Debtor

                                              /s/ NANNETTE M. FARIA
                                              Debtor

Dated:  June 27, 2016                         /s/ HANK W. WALTH
                                              Debtor's Attorney

Name of Debtor: FARIA, Michael A. and          Case No. 14-21631-D-13G
                FARIA, Nannette M.,


### FIRST MODIFIED CHAPTER 13 PLAN
(Continuation Sheet)



## ADDITIONAL PROVISIONS


6.01   <u>1.01</u>--All plan payment and monthly dividend arrears through month 27
       (May 2016) are suspended.

6.02   <u>2.06</u>--Debtors' initial attorney of record, Anthony R. Sales, was paid
       $2,200.00 prior to the filing of the case. Subject to prior court approval,
       additional fees of $-0- shall be paid through this plan. Debtors' attorney
       will seek the court's approval by complying with Local Bankruptcy Rule
       2016-1(c).

       Debtors' current attorney of record, Hank W. Walth, was paid $1,000.00
       prior to substitution, said funds being held in trust. Subject to prior court
       approval, additional fees to be determined shall be paid through this plan.
       Debtors' attorney will seek the court's approval by filing and serving a
       motion in accordance with 11 U.S.C. §§ 329 and 330, Fed. R. Bankr. P.
       2002, 2016 and 2017.

# EXHIBIT "E"

HANK W. WALTH #158362
LAW OFFICE OF HANK W. WALTH
2525 Pacific Avenue, Suite 2
Post Office Box 77794
Stockton, California 95267-1094
Telephone: (209) 469-9110
Facsimile:  (209) 391-2919

Attorney for Debtors

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF CALIFORNIA, SACRAMENTO DIVISION

| | |
|---|---|
| In re:<br><br>FARIA, Michael A. and<br>FARIA, Nannette M.,<br><br>Debtors. | Case No.:  14-21631-D-13G<br>DC No.:    HWW-2<br><br>Date:       August 23, 2016<br>Time:       10:00 a.m.<br>Courtroom:  34, 6th Floor<br>501 I Street<br>Sacramento, CA |

## DEBTORS' MOTION TO MODIFY
## CHAPTER 13 PLAN (FIRST MODIFIED PLAN)

DEBTORS MICHAEL A. FARIA AND NANNETTE M. FARIA HEREBY MOVE for an order modifying their chapter 13 plan as follows:

1.    The debtors' case was commenced on February 21, 2014 and their amended plan confirmed at hearing on August 26, 2014.

2.    The plan provides for the payment of arrears on the first and second mortgages on their home, the surrender of their rental property, and a 100% dividend to general unsecured creditors. All allowed claims have been paid in full with the exception of the arrears on the first mortgage, which according to the trustee's records has a balance due of $19,707.40 (see Exhibit 1).

///

1

3.     Bayview Loan Servicing LLC is the current servicer of the first mortgage, a 15-year fixed rate loan that the debtors took out in 2004. Immediately before being transferred to Bayview, it was serviced by BSI Financial Services and CitiMortgage. The monthly payment is $1,028.96 for principal and interest (see Exhibit 2). The trustee has been paying the ongoing mortgage payment in the amount of $1,381.76, which includes $352.80 per month for the taxes and insurance ($1,381.76 less $1,028.96 = $352.80) (see Exhibit 3).

4.     During the administration of the case, the debtors became aware that property taxes on their home were not being paid, even though their payment has always included an impound account. They are unaware what BSI and Bayview have done with the impound portion of the payments that the trustee has sent them. Their previous attorney, Anthony R. Sales, made a qualified written request for an accounting to Bayview in October 2015, and to BSI and CitiMortgage the following month. All were sent by certified mail. BSI and CitiMortgage never acknowledged the requests. Bayview did acknowledge the written request, but indicated they could not provide a response to the debtors because they were in a chapter 13 bankruptcy and any inquiries had to be submitted by their attorney (see Exhibit 4). Michael Faria responded to the letter, bringing to Bayview's attention that the qualified written request was submitted by their attorney, and again asking for an accounting (see Exhibit 5). Bayview responded that a "complete response" would be provided on or before December 23, 2015 (see Exhibit 6). To date no response has been received.

///

///

///

///

2

1   5. Michael Faria also had a number of discussions with Jessica

2 Frazier in the Bayview bankruptcy department. She told him that the

3 amount needed to bring the account current was $7,263.32, and that sum

4 was sent by personal check (see Exhibit 7). The funds cleared the debtors'

5 bank on December 23, 2015 (see Exhibit 8).

6   6. Based upon the information supplied by Bayview, and the

7 cashing of the check, the debtors believe the account has been current since

8 the first of this year. In fact, it may have been overpaid since Bayview

9 cannot explain what happened to the escrow portion of the payments that

10 the trustee sent but was not applied to property taxes or insurance. They

11 cannot be certain, however, without an accounting.

12   7. The debtors will be filing an objection to the BSI/Bayview proof

13 of claim to be heard with this motion. Their First Modified Plan provides for

14 the claim in the amount of $17,600.00, the amount paid by the trustee to

15 date.

16   8. The debtors' first modified plan provides for a plan length of 27

17 months and the suspension of all payment arrears. Class 7 unsecured

18 creditors continue to receive no less than a 100% dividend. The plan meets

19 the Bankruptcy Code requirements for modification.

20   WHEREFORE, the debtors pray for an order modifying their plan.

21

22 Date: June 23, 2016      /s/ HANK W. WALTH

               Attorney for Debtors

23

24

25

26

27

28

3

# EXHIBIT "F"

| 1 | HANK W. WALTH #158362 |
| | LAW OFFICE OF HANK W. WALTH |
| 2 | 2525 Pacific Avenue, Suite 2 |
| | Post Office Box 77794 |
| 3 | Stockton, California 95267-1094 |
| | Telephone: (209) 469-9110 |
| 4 | Facsimile: (209) 391-2919 |
| 5 | Attorney for Debtors |

UNITED STATES BANKRUPTCY COURT

EASTERN DISTRICT OF CALIFORNIA, SACRAMENTO DIVISION

| In re: | ) | Case No.: | 14-21631-D-13G |
| | ) | DC No.: | HWW-2 |
| | ) | | |
| FARIA, Michael A. and | ) | Date: | March 14, 2017 |
| FARIA, Nannette M., | ) | Time: | 10:00 a.m. |
| | ) | Courtroom: | 34, 6th Floor |
| Debtors. | ) | | 501 I Street |
| | ) | | Sacramento, CA |

**ORDER MODIFYING**
**CHAPTER 13 PLAN**

**IT IS HEREBY ORDERED** that the debtors' motion to modify chapter 13 plan is granted. The modified plan (First Modified Plan), filed on June 30, 2016, complies with 11 U.S.C. §§ 1322(a) and (b), 1323(c), 1325(a) and 1329.

///
///
///
///
///
///

1

RECEIVED
March 16, 2017
CLERK, U.S. BANKRUPTCY COURT
EASTERN DISTRICT OF CALIFORNIA
0006005185

| | |
|---|---|
| 1 | **IT IS FURTHER ORDERED** that the plan is amended to provide that |
| 2 | the debtors shall make all ongoing monthly post-petition mortgage |
| 3 | payments directly to Bayview Loan Servicing, LLC commencing July 2016, |
| 4 | and to PNC Bank, N.A. commencing June 2016. |
| 5 | |
| 6 | _/s/ Russell P. Ahr_ |
| 7 | Approved by the Chapter 13 Trustee as to form. |
| 8 | |
| 9 | _/s/ Edward G. Schloss_ |
| 10 | EDWARD G. SCHLOSS Attorney for Bayview Loan Servicing, LLC |
| 11 | Approved as to form. |
| 12 | |
| 13 | DATED: _____        BY THE COURT |
| 14 | |
| 15 | Dated: March 16, 2017 |
| 16 | |
| 17 | _/s/ Robert Bardwil_ |
| 18 | Robert S. Bardwil, Judge United States Bankruptcy Court |
| 19 | |
| 20 | |
| 21 | |
| 22 | |
| 23 | |
| 24 | |
| 25 | |
| 26 | |
| 27 | |
| 28 | |

2

# EXHIBIT "G"

Doc #:  2023-069029
08/31/2023 07:23.49 AM
Page 1 of 2  Fee: $100.00
Steve J. Bestolarides
San Joaquin County Recorder
Paid By:

WFG National-Default Services

RECORDING REQUESTED BY
**Prestige Default Services, LLC**

AND WHEN RECORDED MAIL TO:
**Prestige Default Services, LLC**
**1920 Old Tustin Ave.**
**Santa Ana, California 92705**
**Phone: 949-427-2010**

SPACE ABOVE THIS LINE FOR RECORDER'S USE

T.S. No.: **23-8856**     Loan No.: **\*\*9357**
APN: **110-080-080-000 aka 110-080-08**

## NOTICE OF TRUSTEE'S SALE

NOTE: THERE IS A SUMMARY OF THE INFORMATION IN THIS DOCUMENT ATTACHED
注：本文件包含一个信息摘要
참고사항: 본 첨부 문서에 정보 요약서가 있습니다
NOTA: SE ADJUNTA UN RESUMEN DE LA INFORMACIÓN DE ESTE DOCUMENTO
TALA: MAYROONG BUOD NG IMPORMASYON SA DOKUMENTONG ITO NA NAKALAKIP
LƯU Ý: KÈM THEO ĐÂY LÀ BẢN TRÌNH BÀY TÓM LƯỢC VỀ THÔNG TIN TRONG TÀI LIỆU NÀY

**YOU ARE IN DEFAULT UNDER A DEED OF TRUST DATED 9/10/2004. UNLESS YOU TAKE ACTION TO PROTECT YOUR PROPERTY, IT MAY BE SOLD AT A PUBLIC SALE. IF YOU NEED AN EXPLANATION OF THE NATURE OF THE PROCEEDING AGAINST YOU, YOU SHOULD CONTACT A LAWYER.**

A public auction sale to the highest bidder for cash, cashier's check drawn on a state or national bank, check drawn by a state or federal credit union, or a check drawn by a state or federal savings and loan association, or savings association, or savings bank specified in Section 5102 of the Financial Code and authorized to do business in this state will be held by the duly appointed trustee as shown below, of all right, title, and interest conveyed to and now held by the trustee in the hereinafter described property under and pursuant to a Deed of Trust described below. The sale will be made, but without covenant or warranty, expressed or implied, regarding title, possession, or encumbrances, to pay the remaining principal sum of the note(s) secured by the Deed of Trust, with interest and late charges thereon, as provided in the note(s), advances, under the terms of the Deed of Trust, interest thereon, fees, charges and expenses of the Trustee for the total amount (at the time of the initial publication of the Notice of Sale) reasonably estimated to be set forth below. The amount may be greater on the day of sale.

Trustor: **Michael Faria, a Married man and Nanette Faria, a Married Woman**
Duly Appointed Trustee: **Prestige Default Services, LLC**
Recorded 10/5/2004 as Instrument No. 2004-226181 in book --, page -- of Official Records in the office of the Recorder of San Joaquin County, California,
Date of Sale: **10/2/2023 at 9:30 AM**
Place of Sale:   **At the East Weber Avenue entrance steps to the San Joaquin County Courthouse, 180 East Weber Avenue, Stockton, CA 95202**

Amount of unpaid balance and other charges: **$61,893.97**
Street Address or other common designation of real property:    **2315 PICCARDO CIRCLE STOCKTON CA 95207**

A.P.N.: **110-080-080-000 aka 110-080-08**



NOTICE OF SALE
SUMMARY OF KEY INFORMATION

The attached notice of sale was sent to Michael Faria, a Married man and Nanette Faria, a Married Woman, in relation to 2315 PICCARDO CIRCLE, STOCKTON CA 95207.

YOU ARE IN DEFAULT UNDER A DEED OF TRUST OR MORTGAGE DATED 9/10/2004. UNLESS YOU TAKE ACTION TO PROTECT YOUR PROPERTY, IT MAY BE SOLD AT A PUBLIC SALE.

IF YOU NEED AN EXPLANATION OF THE NATURE OF THE PROCEEDING AGAINST YOU, YOU SHOULD CONTACT A LAWYER.

The total amount due in the notice of sale is $61,893.97.

Your property is scheduled to be sold on 10/2/2023 at 9:30 AM at At the East Weber Avenue entrance steps to the San Joaquin County Courthouse, 180 East Weber Avenue, Stockton, CA 95202

However, the sale date shown on the attached notice of sale may be postponed one or more times by the mortgagee, beneficiary, trustee, or a court, pursuant to Section 2924g of the California Civil Code. The law requires that information about trustee sale postponements be made available to you and to the public, as a courtesy to those not present at the sale. If you wish to learn whether your sale date has been postponed, and, if applicable, the rescheduled time and date for the sale of this property, you may call (916) 939-0772 or visit this Internet Web site address www.nationwideposting.com, using the file number assigned to this case 23-8856. Information about postponements that are very short in duration or that occur close in time to the scheduled sale may not immediately be reflected in the telephone information or on the Internet Web site. The best way to verify postponement information is to attend the scheduled sale.

If you would like additional copies of this summary, you may obtain them by calling 949-427-2010.



P.O. Box 23159
San Diego, CA 92193-3159

IMPORTANT INFORMATION
ENCLOSED



(11)  969 0024 8585 8089 0

**Mailed On:** 9/5/2023          **Order Number:** 0034219-01
**ClientID:** Prestige000402 FC  **Reference Number:**   23-8856

Nanette  Faria
2315 PICCARDO CIRCLE
STOCKTON, CA 95207-6590



GenericAddressInsert.doc

Rev. 12/19/2018