UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICHAEL A. FARIA, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>PNC BANK NATIONAL ASSOCIATION, et al.,<br><br>Defendants. | No. 2:23-cv-02023-DAD-KJN<br><br>ORDER DENYING PLAINTIFFS' *EX PARTE* APPLICATION FOR A TEMPORARY RESTRAINING ORDER<br><br>(Doc. Nos. 6, 10) |

This matter is before the court on an *ex parte* application for a temporary restraining order filed on behalf of plaintiffs Michael A. Faria and Nanette M. Faria on September 28, 2023. (Doc. No. 6.) For the reasons explained below, plaintiffs' application will be denied.

**BACKGROUND**

On September 18, 2023, plaintiffs filed their verified complaint against defendants PNC Bank, National Association ("PNC Bank"), a mortgage lender, and SN Servicing Corporation ("SN Servicing"), a mortgage servicer, seeking a temporary restraining order deferring a trustee sale of plaintiffs' property scheduled for October 2, 2023. (Doc. No. 1.) In their verified complaint, plaintiffs allege as follows.

Plaintiffs reside at and own the property located at 2315 Piccardo Circle, Stockton, California (the "property"), which they purchased in 1988. (*Id.* at ¶¶ 3, 11.) In 2006, non-party

1

National City Bank, as the lender to plaintiffs for their purchase of the property, recorded a deed of trust against the property. (*Id.* at ¶ 12.) According to plaintiffs, defendant PNC Bank is the successor in interest to National City Bank, and defendant SN Servicing is the current servicer for defendant PNC Bank. (*Id.* at ¶¶ 2–3, 13–14.) Thus, defendant PNC Bank and defendant SN servicing are, respectively, alleged to be the current lender and servicer for the mortgage loan on the property. (*Id.*)

On or about February 21, 2014, plaintiffs filed a voluntary petition for chapter 13 bankruptcy in the United States Bankruptcy Court for the Eastern District of California. (*Id.* at ¶ 15.) In conjunction with their voluntary petition, on or about July 10, 2014, plaintiffs filed a second amended chapter 13 plan of repayment, which included payments that were to be made to defendant PNC bank. (*Id.* at ¶ 16.) On or about June 30, 2016, plaintiffs filed a first modified chapter 13 plan showing that $17,600.00 in arrears was owed to non-party Bayview Loan Servicing LLC ("Bayview"), which was defendant PNC's mortgage servicer. (*Id.* at ¶ 17, 20.) During the administration of their bankruptcy, plaintiffs discovered that Bayview, had not been "providing payment for the property taxes associated with" the property. (*Id.* at ¶ 18.) As a result, on or about August 26, 2016, plaintiffs filed a motion to modify their plan and demanded an accounting from Bayview. (*Id.*)

On or about December 23, 2016,[1] Bayview responded to plaintiffs that they needed to pay $7,263.32 to bring their account holding their homeowner's insurance and property tax payments current. (*Id.* at ¶ 19.) Plaintiffs paid Bayview the amount requested. (*Id.*) However, plaintiffs allege that they still objected to Bayview's "proof of claim" of $17,600.00 because "Bayview was unable to account for the payments received." (*Id.* at ¶ 20.) On or about March 14, 2017, the bankruptcy court entered an order adopting the first modified plan dated June 30, 2016, and ordering "the debtors [to] make all ongoing monthly post-petition mortgage payments directly to

/////

/////

---

[1] It appears that plaintiffs intended this date to be 2016, although they apparently alleged the year to be 2015 by mistake.

1    [Bayview] commencing July 2016, and to [PNC Bank] commencing June 2016."[2] (*Id.* at 43.)

2    On or about October 3, 2017, plaintiffs' bankruptcy proceeding was closed. (Doc. No.

3    22.) Since the closure of their bankruptcy proceeding, plaintiffs allege that defendants "have

4    constantly bombarded Plaintiffs with correspondence and notices demanding payment for

5    amounts allegedly owed [for] taxes and homeowner's insurance Defendants claim they paid on

6    Plaintiffs' behalf for the [property]." (*Id.* at ¶ 23.) However, plaintiffs "do not believe that such

7    amounts are owed or believe that [defendants[3]] [sic] paid such amounts directly." (*Id.*)

8    On or about August 31, 2023, defendants served plaintiffs with a notice of trustee sale,

9    claiming that plaintiffs were in default to defendants in the amount of $61,893.37, and if that

10   amount was not paid to defendants, the property could be sold at a trustee sale scheduled for

11   October 2, 2023. (*Id.* at ¶ 24.)

12   Based on the foregoing, plaintiffs bring the following claims against defendants: (1)

13   violation of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692, *et seq.*; (2)

14   violation of California's Rosenthal Fair Debt Collection Practices Act ("Rosenthal Act"),

15   California Civil Code § 1788, *et seq.*; (3) breach of contract; (4) quiet title; and (5) declaratory

16   relief. (Doc. No. 1 at ¶¶ 25–51.) Plaintiffs' prayer for relief seeks: a temporary restraining order

17   preserving the status quo and deferring the scheduled date of the trustee sale until they can file a

18   motion for a preliminary injunction; a declaratory judgment that plaintiffs are the exclusive

19   owners of the property; and compensatory damages, attorneys' fees, and costs. (*Id.* at 9.)

20   /////

21   /////

22   /////

23   /////

24   /////

---

[2] Although plaintiffs do not explicitly allege that defendant SN Servicing is the successor in interest to Bayview, that is the reasonable inference drawn from plaintiffs' allegations.

[3] It appears that plaintiffs intended to allege that they do not believe "defendants" paid the amounts in question for taxes and insurance but the complaint mistakenly refers to "plaintiffs" in advancing this allegation.

On September 28, 2023, plaintiffs file an *ex parte* application for a temporary restraining order.[4] (Doc. No. 6.) That same day, plaintiffs also filed a summons returned as executed as to both defendants showing that they were served with the complaint on September 19, 2023. (Doc. Nos. 4, 5.) On September 29, 2023, defendant SN Servicing filed an opposition to the pending application for temporary restraining order and a request for judicial notice.[5] (Doc. Nos. 9, 10.)

## LEGAL STANDARD

The standard governing the issuing of a temporary restraining order is "substantially identical" to the standard for issuing a preliminary injunction. *See Stuhlbarg Int'l Sales Co. v. John D. Brush & Co.*, 240 F.3d 832, 839 n.7 (9th Cir. 2001). "The proper legal standard for preliminary injunctive relief requires a party to demonstrate 'that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the

---

[4] In the pending application for a temporary restraining order, plaintiffs' counsel represents he contacted counsel for defendant SN Servicing on September 19, 2023 regarding postponing the trustee sale to allow for an accounting of plaintiffs' payments for homeowner's insurance and property taxes. (Doc. No. 6 at 5.) However, counsel states that the parties were not able to reach a stipulation. (*Id.*) In addition, plaintiffs' counsel represents that he received an email from counsel for defendant PNC Bank on September 27, 2023 stating that defendant PNC Bank "no longer had any claims against Plaintiffs or the Subject Property." (*Id.*) Despite this representation by defendant PNC Bank, plaintiffs still seek the issuance of a temporary restraining order against both defendants PNC Bank and SN Servicing.

[5] Defendant SN Servicing requests that the court take judicial notice of 12 documents pulled from the official records of the San Joaquin County Recorder: (1) Deed of Trust recorded October 5, 2004, as Document No. 2004-226181; (2) Substitution of Trustee recorded April 6, 2009, as Document No. 2009-051594; (3) Assignment of Deed of Trust recorded December 10, 2012, as Document No. 2012-161231; (4) Assignment of Deed of Trust recorded December 10, 2012, as Document No. 2012-161680; (5) Substitution of Trustee recorded April 12, 2023, as Document No. 2013-052600; (6) Assignment of Deed of Trust recorded May 6, 2013, as Document No. 2013-059613; (7) Assignment of Deed of Trust recorded November 23, 2015, as Document No. 2015-139092; (8) Substitution of Trustee recorded March 5, 2019, as Document No. 2019-022353; (9) Substitution of Trustee recorded January 16, 2020, as Document No. 2020-006933; (10) Corporate Assignment of Deed of Trust recorded July 11, 2022, as Document No. 2022-084005; (11) Assignment of Deed of Trust recorded May 1, 2023, as Document No. 2023-033103; and (12) Assignment of Deed of Trust recorded May 1, 2023, as Document No. 2023-033104. (Doc. No. 8.) Because all of these documents are matters of public record and their existence is not subject to reasonable dispute, the court will take judicial notice of them. *See Grant v. Aurora Loan Servs., Inc.*, 736 F. Supp. 2d 1257, 1264 (C.D. Cal. 2010) (collecting cases taking judicial notice of documents recorded by the county recorder's office).

1  balance of equities tips in his favor, and that an injunction is in the public interest.'" *Stormans,*
2  *Inc. v. Selecky*, 586 F.3d 1109, 1127 (9th Cir. 2009) (quoting *Winter v. Nat. Res. Def. Council,*
3  *Inc.*, 555 U.S. 7, 20 (2008)); *see also Ctr. for Food Safety v. Vilsack*, 636 F.3d 1166, 1172 (9th
4  Cir. 2011) ("After *Winter*, 'plaintiffs must establish that irreparable harm is likely, not just
5  possible, in order to obtain a preliminary injunction.'"); *Am. Trucking Ass'n, Inc. v. City of Los*
6  *Angeles*, 559 F.3d 1046, 1052 (9th Cir. 2009). A plaintiff seeking a preliminary injunction must
7  make a showing on all four of these prongs. *All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127,
8  1135 (9th Cir. 2011). The Ninth Circuit has also held that "[a] preliminary injunction is
9  appropriate when a plaintiff demonstrates . . . that serious questions going to the merits were
10 raised and the balance of hardships tips sharply in the plaintiff's favor." *Id.* at 1134–35 (citation
11 omitted). The party seeking the injunction bears the burden of proving these elements. *Klein v.*
12 *City of San Clemente*, 584 F.3d 1196, 1201 (9th Cir. 2009); *see also Caribbean Marine Servs. Co.*
13 *v. Baldrige*, 844 F.2d 668, 674 (9th Cir. 1988) (citation omitted) ("A plaintiff must do more than
14 merely allege imminent harm sufficient to establish standing; a plaintiff must *demonstrate*
15 immediate threatened injury as a prerequisite to preliminary injunctive relief."). Finally, an
16 injunction is "an extraordinary remedy that may only be awarded upon a clear showing that the
17 plaintiff is entitled to such relief." *Winter*, 555 U.S. at 22.
18      The likelihood of success on the merits is the most important *Winter* factor. *See Disney*
19 *Enters., Inc. v. VidAngel, Inc.*, 869 F.3d 848, 856 (9th Cir. 2017). Plaintiffs bear the burden of
20 demonstrating that they are likely to succeed on the merits of their claims or, at the very least, that
21 "serious questions going to the merits were raised." *All. for Wild Rockies*, 632 F.3d at 1131.
22 "Because Plaintiffs seek a mandatory injunction, they 'must establish that the law and facts
23 *clearly favor* [their] position, not simply that [they are] likely to succeed.'" *LA All. for Hum. Rts.*
24 *v. Cnty. of Los Angeles*, 14 F.4th 947, 956 (9th Cir. 2021) (citation omitted).

## ANALYSIS

26 Plaintiffs argue that they have "raise[d] questions regarding [defendant SN Servicing's]
27 accounting of amounts alleged[ly] owed for homeowner's insurance and property taxes." (Doc.
28 No. 6 at 6–7.) Plaintiffs contend that, during their bankruptcy, they were making payments to

5

defendant SN Servicing, but that SN Servicing did not pay homeowner insurance or property taxes on their behalf until after plaintiffs filed their "Motion to Amend Confirmed Plan." (*Id.* at 7.) Since the closure of plaintiffs' bankruptcy, they have made direct payments to the San Joaquin County Treasurer-Tax Collector, despite defendant SN Servicing claiming it made such payments. (*Id.*) However, in advancing this argument, plaintiffs fail to connect the allegations in their complaint or their argument in their pending application to any of the asserted claims brought against defendants in this action. Even more troubling, defendant SN Servicing argues in its opposition that plaintiffs have two deeds of trust on the property, and plaintiffs are commingling issues regarding the two deeds of trust when they are in fact separate and distinct. (Doc. No. 9 at 3–4.) Notably, defendant SN Servicing argues it is only associated with a deed of trust recorded in 2004, as opposed to the deed of trust recorded in 2006 that is alleged in, and attached to, plaintiffs' complaint. (*Id.* at 4.) Although defendant SN Servicing has raised doubt as to whether it is a properly named defendant in connection with plaintiffs' claims asserted in this action, the court need not address this issue in resolving the pending application for a temporary restraining order. For the reasons stated below, the court concludes that plaintiffs have neither shown a likelihood of success on the merits nor raised serious questions going to the merits of the four claims they have asserted in their complaint. The court will address each of plaintiffs' claims in turn below.

First, plaintiffs cannot obtain injunctive relief for violations of the FDCPA and Rosenthal Act. *See Varnado v. Midland Funding LLC*, 43 F. Supp. 3d 985, 992–93 (N.D. Cal. 2014) (finding that remedies under the FDCPA and Rosenthal Act are "are limited to damages, attorney's fees and costs" and dismissing the plaintiffs "requests for declaratory and injunctive relief under the FDCPA and Rosenthal Act"); *Perez v. Bank of Am., N.A.*, No. 21-cv-01977-BAS-LR, 2022 WL 10756681, at *2 (S.D. Cal. Oct. 18, 2022) (denying an application for a temporary restraining order brought under the FDCPA and Rosenthal Act).

Moreover, plaintiffs have not shown that defendants PNC Bank and SN Servicing, alleged to be a mortgage lender and mortgage servicer, qualify under the general definition of "debt collectors" or that foreclosing on a mortgage constitutes debt collection under the FDCPA. *See*

6

*Tierney v. Carrington Mortg. Servs., LLC*, No. 22-35221, 2023 WL 2783241, at *2 (9th Cir. Apr. 5, 2023)[6] ("[T]he Supreme Court held that an entity 'principally involved in "the enforcement of security interests" is not a debt collector except for the purpose of section 1692f(6) [of the FDCPA].'") (quoting *Obduskey v. McCarthy & Holthus LLP*, __ U.S. __, 139 S. Ct. 1029, 1033 (2019)); *Vien-Phuong Thi Ho v. ReconTrust Co., NA*, 858 F.3d 568, 572 (9th Cir. 2017) (finding that "actions taken to facilitate a non-judicial foreclosure, such as sending the notice of default and notice of sale, are not attempts to collect 'debt' as that term is defined by the FDCPA"). Notably, plaintiffs do allege in their complaint that defendants violated § 1692f(6), which is the one provision in the FDCPA that does apply to entities enforcing security interests. Specifically, to support their FDCPA claim, plaintiffs allege only that defendants "violated this provision through the use of correspondence and notices threatening to take nonjudicial action (i.e., the Trustee Sale) to dispossess Plaintiffs of the Subject Property without a legal ability or intention to do so." (Doc. No. 1 at ¶ 27.) But this allegation amounts to nothing more than a recitation of the elements of § 1692f(6), which is insufficient to state a cognizable claim. Plaintiffs have failed to present any facts or argument indicating that they are likely to succeed on the merits of an FDCPA claim brought against these defendants predicated on a violation of § 1692f(6). *See also Ghalehtak v. Fay Servicing, LLC*, No. 17-cv-05976-EMC, 2017 WL 4805589, at *4–5 (N.D. Cal. Oct. 25, 2017) (denying a motion for a temporary restraining order based on an alleged § 1692f(6) violation "because injunctive relief is not a remedy in individual actions under the FDCPA").

Second, it is true that under California law, "a nonjudicial foreclosure can be 'debt collection' by a 'debt collector' so as to trigger the protections of the Rosenthal Act." *Best v. Ocwen Loan Servicing, LLC*, 64 Cal. App. 5th 568, 580 (2021) (finding that allegations "that go beyond the scope of an ordinary foreclosure" such as the "'unethical mismanagement of the escrow account' and 'refusal to correct accounting errors,'" can state a Rosenthal Act claim under California's pleading standard). But here, plaintiffs merely allege in their complaint that "[t]he

---

[6] Citation to this unpublished Ninth Circuit opinion is appropriate pursuant to Ninth Circuit Rule 36–3(b).

7

1  foregoing acts and omissions constitute violations of the [Rosenthal Act]." (Doc. No. 1 at ¶ 34.)
2  There are no allegations in the complaint that make clear which provisions of the Rosenthal Act
3  defendants allegedly violated or that specify which actions by defendants were purportedly
4  unlawful. *See Mohandas v. Wells Fargo Bank, N.A.*, No. 21-cv-03349-JAK-PD, 2023 WL
5  5506004, at *11 (C.D. Cal. July 13, 2023) (dismissing a Rosenthal Act claim brought against
6  mortgage servicer where the plaintiff did not allege that the defendant engaged in any particular
7  actions prohibited by the Rosenthal Act or specify any provisions that were allegedly violated).
8  At most, plaintiffs contend that there is some dispute between them and defendants regarding
9  whether certain payments were made toward plaintiffs' homeowners' insurance and property
10 taxes during the administration of plaintiffs' bankruptcy. But there is no coherent argument
11 advanced by plaintiffs or factual allegations made indicating that this dispute involves violations
12 of the Rosenthal Act on the part of defendants, such as an allegation that their foreclosure on the
13 property is not permitted by law. *See* Cal. Civ. Code § 1788.10 (listing unlawful conduct
14 prohibited by the Rosenthal Act).

15 　　　　Third, plaintiffs allege that they have "performed all the acts, services and conditions
16 required on its part to be performed pursuant to the Deed of Trust," while defendant "breached
17 the terms of the Agreement by continuing to attempt to collect debts associated with the Deed of
18 Trust." (Doc. No. 1 at ¶¶ 37–38.) Plaintiffs have failed to identify what "Agreement" they are
19 referring to in their complaint in this regard, let alone what provision of the agreement they
20 contend defendants have breached. *See Young v. Facebook, Inc.*, 790 F. Supp. 2d 1110, 1117
21 (N.D. Cal. 2011) (dismissing a breach of contract claim where the plaintiff failed to provide
22 specificity regarding what contractual provisions the defendant had allegedly violated). At the
23 same time, plaintiffs appear to contend that the deed of trust is the contract that serves as the basis
24 for their breach of contract claim. But "a deed of trust is not a contract between a borrower and
25 lender; rather, it is a document conveying an interest in real property as security for performance
26 of an obligation under a contract." *Carter v. Sables, LLC*, No. 3:17-cv-00594-MMD-WGC, 2017
27 WL 6328157, at *4 (D. Nev. Dec. 11, 2017) (citing Restatement (Third) of Property (Mortgages)
28 § 1.1 (Am. Law Inst. 1997)) (dismissing a breach of contract claim without leave to amend in an

1   action involving the plaintiff's mortgage loan because the plaintiff's contract claim was based on
2   a deed of trust).

3   Fourth, "under California law, a party seeking to set aside a foreclosure or trustee's sale
4   must make a 'valid and viable tender of payment of the indebtedness owing.'" *Pascascio v. New*
5   *Century Mortg. Corp.*, No. 12-cv-00839-PSG-FMO, 2012 WL 1745619, at *3 (C.D. Cal. May 16,
6   2012); *see also Wadhwa v. Aurora Loan Servs., LLC*, No. 11-cv-001784-KJM-KJN, 2012 WL
7   762020, at *9 (E.D. Cal. Mar. 8, 2012) ("Tender of the indebtedness is required to quiet title in
8   California."); *Herrejon v. Ocwen Loan Servicing, LLC*, 980 F. Supp. 2d 1186, 1198 (E.D. Cal.
9   2013) ("It is settled in California that a mortgagor cannot quiet his title against the mortgagee
10  without paying the debt secured."). Plaintiffs have failed to allege in their complaint, nor do they
11  argue in the pending application, that they have made a tender of the amount owing, or that they
12  have to ability to do so. Plaintiffs merely allege in their complaint that defendants "claim a
13  security interest in the Subject Property" and that plaintiffs "deny" defendants' claim. (Doc. No.
14  1 at ¶ 43.)

15  Fifth and finally, because plaintiffs have not shown that they are likely to succeed on any
16  of their first four claims, such is also the case as to their final claim for declaratory relief. *See*
17  *Darling v. Green*, No. 12-cv-00362-PSG-CW, 2013 WL 12132058, at *9 (C.D. Cal. Apr. 18,
18  2013) ("[D]eclaratory relief is a remedy, not a freestanding cause of action, and Plaintiffs' action
19  for declaratory relief survives only to the extent that Plaintiffs' other causes of action state a claim
20  for relief.").

21  In sum, the court concludes that plaintiffs have failed to demonstrate that they are likely to
22  succeed on the merits of their claims brought against the defendants named in this action or that
23  they have even raised serious questions going to the merits of their claims. Because plaintiffs
24  have failed to make that required showing, their motion for a temporary restraining order will be
25  denied.
26  /////
27  /////
28  /////

**CONCLUSION**

For the reasons explained above,

1. Defendant SN Servicing Corporation's request for judicial notice (Doc. No. 10) is granted; and

2. Plaintiffs' *ex parte* application for a temporary restraining order (Doc. No. 6) is denied.

IT IS SO ORDERED.

Dated: __**September 30, 2023**__          *Dale A. Drozd*
                                             DALE A. DROZD
                                             UNITED STATES DISTRICT JUDGE