UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICHAEL A. FARIA, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>PNC BANK NATIONAL ASSOCIATION, et al.,<br><br>Defendants. | No. 2:23-cv-02023-DAD-KJN<br><br>ORDER GRANTING DEFENDANT SN SERVICING CORPORATION'S MOTION TO DISMISS PLAINTIFFS' COMPLAINT, WITH LEAVE TO AMEND<br><br>(Doc. No. 15) |

    This matter came before the court on November 21, 2023 for a hearing on defendant SN Servicing Corporation's motion to dismiss plaintiffs' complaint. (Doc. No. 15.) Attorney Yasha Rahimzadeh appeared by video on behalf of plaintiffs Michael A. Faria and Nannette M. Faria. Attorneys Kellen Adams and Rachel C. Witcher and appeared by video on behalf of defendant. For the reasons explained below, defendant's motion to dismiss will be granted, with leave to amend.

**BACKGROUND**

    On September 18, 2013, plaintiffs filed their verified complaint against defendants PNC Bank, National Association ("PNC Bank"), a mortgage lender, and SN Servicing Corporation ("SN Servicing"), a mortgage servicer, seeking a temporary restraining order deferring a trustee

/////

/////

1

sale of plaintiffs' property scheduled for October 2, 2023.[1]  (Doc. No. 1.)  In their verified complaint, plaintiffs allege as follows.

Plaintiffs reside at and own the property located at 2315 Piccardo Circle, Stockton, California (the "property"), which they purchased in 1988.  (*Id.* at ¶¶ 3, 11.)  In 2006, non-party National City Bank, as the lender to plaintiffs for their purchase of the property, recorded a deed of trust against the property.  (*Id.* at ¶ 12.)  According to plaintiffs, PNC Bank is the successor in interest to National City Bank, and defendant SN Servicing is the current servicer for PNC Bank.  (*Id.* at ¶¶ 2–3, 13–14.)  Thus, PNC Bank and defendant SN servicing are, respectively, alleged to be the current lender and servicer for the mortgage loan on the property.  (*Id.*)

On or about February 21, 2014, plaintiffs filed a voluntary petition for chapter 13 bankruptcy in the United States Bankruptcy Court for the Eastern District of California.  (*Id.* at ¶ 15.)  In conjunction with their voluntary petition, on or about July 10, 2014, plaintiffs filed a second amended chapter 13 plan of repayment, which included payments that were to be made to PNC Bank.  (*Id.* at ¶ 16.)  On or about June 30, 2016, plaintiffs filed a first modified chapter 13 plan showing that $17,600.00 in arrears was owed to non-party Bayview Loan Servicing LLC ("Bayview"), which was PNC Bank's mortgage servicer.  (*Id.* at ¶¶ 17, 20.)  During the administration of their bankruptcy, plaintiffs discovered that Bayview had not been "providing payment for the property taxes associated with" the property.  (*Id.* at ¶ 18.)  As a result, on or about August 26, 2016, plaintiffs filed a motion to modify their plan and demanded an accounting from Bayview.  (*Id.*)

On or about December 23, 2016,[2] Bayview responded to plaintiffs that they needed to pay $7,263.32 to bring their account holding their homeowner's insurance and property tax payments current.  (*Id.* at ¶ 19.)  Plaintiffs paid Bayview the amount requested.  (*Id.*)  However, plaintiffs

---

[1] On October 3, 2023, plaintiffs filed a notice of voluntary dismissal of their claims against defendant PNC Bank National Association.  (Doc. No. 14.)  Pursuant to that notice, defendant PNC Bank National Association was terminated as a named defendant in this action.  Thus, this case proceeds only against defendant SN Servicing Corporation.

[2] It appears that plaintiffs intended this date to be 2016, although they apparently erroneously alleged the year to be 2015.

allege that they still objected to Bayview's "proof of claim" of $17,600.00 because "Bayview was unable to account for the payments received." (*Id.* at ¶ 20.) On or about March 14, 2017, the bankruptcy court entered an order adopting the first modified plan dated June 30, 2016, and ordering "the debtors [to] make all ongoing monthly post-petition mortgage payments directly to [Bayview] commencing July 2016, and to [PNC Bank] commencing June 2016."[3] (*Id.* at 43.)

On or about October 3, 2017, plaintiffs' bankruptcy proceeding was closed. (Doc. No. 22.) Since the closure of their bankruptcy proceeding, plaintiffs allege that PNC Bank and defendant SN Servicing "have constantly bombarded Plaintiffs with correspondence and notices demanding payment for amounts allegedly owed [for] taxes and homeowner's insurance Defendants claim they paid on Plaintiffs' behalf for the [property]." (*Id.* at ¶ 23.) However, plaintiffs "do not believe that such amounts are owed or believe that [defendants[4]] [sic] paid such amounts directly." (*Id.*)

On or about August 31, 2023, PNC Bank and defendant SN Servicing served plaintiffs with a notice of trustee sale, claiming that plaintiffs were in default in the amount of $61,893.37, and if that amount was not paid to them, the property could be sold at a trustee sale scheduled for October 2, 2023. (*Id.* at ¶ 24.)

Based on the foregoing, plaintiffs bring the following claims against defendant SN Servicing: (1) violation of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692, *et seq.*; (2) violation of California's Rosenthal Fair Debt Collection Practices Act ("Rosenthal Act"), California Civil Code § 1788, *et seq.*; (3) breach of contract; (4) quiet title; and (5) declaratory relief. (Doc. No. 1 at ¶¶ 25–51.) Plaintiffs' prayer for relief seeks: a temporary restraining order preserving the status quo and deferring the scheduled date of the trustee sale until they can file a motion for a preliminary injunction; a declaratory judgment that plaintiffs are

/////

---

[3] Although plaintiffs do not explicitly allege that defendant SN Servicing is the successor in interest to Bayview, that is the reasonable inference drawn from plaintiffs' allegations.

[4] It appears that plaintiffs intended to allege that they do not believe "defendants" paid the amounts in question for taxes and insurance but their complaint erroneously refers to "plaintiffs" in advancing this allegation.

1  the exclusive owners of the property; and compensatory damages, attorneys' fees, and costs.  (*Id.*
2  at 9.)

3        On September 28, 2023, plaintiffs filed an *ex parte* application for a temporary restraining
4  order, which defendant SN Servicing opposed.  (Doc. Nos. 6, 9.)  On September 30, 2023, the
5  court issued an order denying plaintiffs' application because they had failed to demonstrate that
6  they are likely to succeed on the merits of their claims or that they had even raised serious
7  questions as to the merits of their claims.  (Doc. No. 13 at 9.)  In that order, the court identified
8  several deficiencies in plaintiffs' allegations, which failed to state any cognizable claims.  (*Id.*)
9  Despite the court's guidance with regard to the numerous defects in the allegations of their
10  complaint, plaintiffs did not thereafter seek to amend their complaint.

11        On October 10, 2023, defendant SN Servicing (hereinafter, "defendant") filed the pending
12  motion to dismiss the complaint due to plaintiffs' failure to state any cognizable claims against it,
13  as already acknowledged by the court in the September 30, 2023 order.[5]  (Doc. No. 15.)  In
14  defendant's notice of motion, defense counsel stated that they attempted to meet and confer with
15  plaintiffs' counsel in order to comply with the court's Standing Order, but plaintiffs' counsel did
16  not respond to defense counsel's email.  (*Id.* at 2.)

17        On October 24, 2023, plaintiffs filed an opposition to the pending motion.  (Doc. No. 18.)
18  However, therein plaintiffs merely largely recite the allegations appearing in their complaint—
19  which the court has already concluded were insufficient—and plaintiffs do not meaningfully
20  address the court's analysis in denying plaintiffs motion for a temporary restraining order or the
21  arguments defendant raised in its pending motion to dismiss.

---

[5] Defendant also concurrently filed a request for judicial notice of five documents on file in the public records of the San Joaquin County Recorder and a copy of the court docket for plaintiffs' bankruptcy case retrieved on PACER.  (Doc. No. 15-1.)  Because all of these documents are matters of public record and their existence is not subject to reasonable dispute, the court will grant defendant's request and take judicial notice of them.  *See Grant v. Aurora Loan Servs., Inc.*, 736 F. Supp. 2d 1257, 1264 (C.D. Cal. 2010) (collecting cases taking judicial notice of documents recorded by the county recorder's office); *see also United States v. Black*, 482 F.3d 1035, 1041 (9th Cir. 2007) (noting that a court "may take notice of proceedings in other courts, both within and without the federal judicial system, if those proceedings have a direct relation to matters at issue").

On November 3, 2023, defendant filed a reply to plaintiffs' opposition, reiterating their contention that plaintiffs' allegations are insufficient and asserting that plaintiffs should not be granted leave to file an amended complaint because they "have not demonstrated that they have the ability to cure the defects in the complaint." (Doc. No. 20 at 2.)

**LEGAL STANDARD**

The purpose of a motion to dismiss pursuant to Rule 12(b)(6) is to test the legal sufficiency of the complaint. *N. Star Int'l v. Ariz. Corp. Comm'n*, 720 F.2d 578, 581 (9th Cir. 1983). "Dismissal can be based on the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990). A plaintiff is required to allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

In determining whether a complaint states a claim on which relief may be granted, the court accepts as true the allegations in the complaint and construes the allegations in the light most favorable to the plaintiff. *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984). However, the court need not assume the truth of legal conclusions cast in the form of factual allegations. *U.S. ex rel. Chunie v. Ringrose*, 788 F.2d 638, 643 n.2 (9th Cir. 1986). While Rule 8(a) does not require detailed factual allegations, "it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678. A pleading is insufficient if it offers mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555; *see also Iqbal*, 556 U.S. at 676 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). Moreover, it is inappropriate to assume that the plaintiff "can prove facts that it has not alleged or that the defendants have violated the . . . laws in ways that have not been alleged." *Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983).

/////

In ruling on a motion to dismiss under Rule 12(b)(6), the court is permitted to consider material that is properly submitted as part of the complaint, documents that are not physically attached to the complaint if their authenticity is not contested and the plaintiffs' complaint necessarily relies on them, and matters of public record. *Lee v. City of Los Angeles*, 250 F.3d 668, 688–89 (9th Cir. 2001).

## ANALYSIS

As noted, in the September 30, 2023 order, the court addressed the allegations in plaintiffs' complaint and concluded that they fell well short of stating cognizable claims. (Doc. No. 13.) The court incorporates by reference its analysis in that order, which is summarized briefly here, with regard to each of plaintiffs' claims.

**A.     FDCPA Claim**

As for plaintiffs' FDCPA claim, plaintiffs have not sufficiently alleged that defendant SN Servicing is a "debt collector" as that term is defined in the FDCPA or that foreclosing on a mortgage constitutes debt collection under the FDCPA. *See Tierney v. Carrington Mortg. Servs., LLC*, No. 22-35221, 2023 WL 2783241, at *2 (9th Cir. Apr. 5, 2023)[6] ("[T]he Supreme Court held that an entity 'principally involved in "the enforcement of security interests" is not a debt collector except for the purpose of section 1692f(6) [of the FDCPA].'") (quoting *Obduskey v. McCarthy & Holthus LLP*, 586 U.S. __, 139 S. Ct. 1029, 1033 (2019)); *Vien-Phuong Thi Ho v. ReconTrust Co., NA*, 858 F.3d 568, 572 (9th Cir. 2017) (finding that "actions taken to facilitate a non-judicial foreclosure, such as sending the notice of default and notice of sale, are not attempts to collect 'debt' as that term is defined by the FDCPA"). The only provision in the FDCPA that applies to entities enforcing security interests is § 1692f(6), and although plaintiffs' reference that provision in their complaint, their allegations merely recite the elements of § 1692f(6). Plaintiffs have not alleged any facts to support an FDCPA claim predicated on a violation of § 1692f(6). For example, as defendant emphasizes in its reply brief, plaintiffs allege that defendant's correspondence and notices demanding payment were harassing, but they do not allege any facts

---

[6] Citation to this unpublished Ninth Circuit opinion is appropriate pursuant to Ninth Circuit Rule 36-3(b).

6

as to the frequency of the contact, or whether defendant threatened violence, used obscene language, or repeatedly called plaintiffs.  (Doc. No. 20 at 2) (citing 15 U.S.C. § 1692d(1–5) (defining harassment under FDCPA)).

Moreover, plaintiffs allege in the complaint that defendant SN Servicing is the mortgage servicer associated with the deed of trust recorded in 2006, a copy of which plaintiffs attached to their complaint. (Doc. No. 1 at ¶¶ 12, 14; *id.* at 14.)  However, defendant SN Servicing asserts that plaintiffs are confused because it is not associated with the 2006 deed of trust, but rather it serves as the servicer of the loan that was secured against the property by a deed of trust recorded on October 5, 2004.  (Doc. No. 15 at 3.)  Indeed, plaintiffs concede in their opposition to the pending motion that their reliance on the 2006 deed of trust created confusion and that they "are prepared to amend their complaint to include reference to the correct deed of trust and associated promissory note." (Doc. No. 18 at 8.)  Thus, as currently pled, there is no cognizable FDCPA claim alleged against defendant.

Further, although not addressed in the court's prior order, defendant has raised serious doubts as to whether plaintiffs' FDCPA claim would be barred by the applicable one-year statute of limitations.  (Doc. No. 15 at 6) (citing 15 U.S.C. § 1640(e)).  Defendant points to plaintiffs' allegation that defendant began sending notices demanding payment after the closure of plaintiffs' bankruptcy in October 2017, yet plaintiffs did not file this action until September 18, 2023—well beyond the applicable one-year statute of limitations period.  (*Id.*)  In their opposition, plaintiffs merely assert in conclusory fashion that "defendant's violations of the FDCPA were ongoing and continuing."  (Doc. No. 18 at 6.)  Because plaintiffs' allegations as to how defendant violated the FDCPA are conclusory, vague, and lacking in any factual detail, the court cannot conclusively determine at this point that plaintiffs' FDCPA claim would be time barred.

**B.      Rosenthal Act Claim**

In the pending motion, defendant asserts that "plaintiffs fail to articulate any specific actions of defendant which would constitute a violation [of the Rosenthal Act] and, instead, simply recite portions of the statute in a conclusory fashion."  (Doc. No. 15.)  The court agrees.

While it is true that under California law, "a nonjudicial foreclosure can be 'debt collection' by a 'debt collector' so as to trigger the protections of the Rosenthal Act," *Best v. Ocwen Loan Servicing, LLC*, 64 Cal. App. 5th 568, 580 (2021), plaintiffs do not allege which provisions of the Rosenthal Act defendant allegedly violated or which specific actions undertaken by defendant were purportedly unlawful. *See Mohandas v. Wells Fargo Bank, N.A.*, No. 21-cv-03349-JAK-PD, 2023 WL 5506004, at *11 (C.D. Cal. July 13, 2023) (dismissing a Rosenthal Act claim brought against mortgage servicer where the plaintiff did not allege that the defendant engaged in any particular actions prohibited by the Rosenthal Act or specify any provisions that were allegedly violated). At most, plaintiffs appear to contend that there is some dispute between them and defendant regarding whether certain payments were made toward plaintiffs' homeowners' insurance and property taxes during the administration of plaintiffs' bankruptcy. But there is no coherent argument advanced by plaintiffs or factual allegations made indicating that this dispute involves violations of the Rosenthal Act on the part of defendant, such as an allegation that its foreclosure on the property is not permitted by law. *See* Cal. Civ. Code § 1788.10 (listing unlawful conduct prohibited by the Rosenthal Act). For these reasons, plaintiffs' allegations fail to state a cognizable claim under the Rosenthal Act.

**C.     Breach of Contract Claim**

In their complaint, plaintiffs allege that they have "performed all the acts, services and conditions required on its part to be performed pursuant to the Deed of Trust," while defendant "breached the terms of the Agreement by continuing to attempt to collect debts associated with the Deed of Trust." (Doc. No. 1 at ¶¶ 37–38.) However, plaintiffs have failed to identify what "Agreement" they are referring to in their complaint in this regard, let alone what provision of the agreement they contend defendant has breached. *See Young v. Facebook, Inc.*, 790 F. Supp. 2d 1110, 1117 (N.D. Cal. 2011) (dismissing a breach of contract claim where the plaintiff failed to provide specificity regarding what contractual provisions the defendant had allegedly violated). To the extent plaintiffs contend that the deed of trust is the contract that serves as the basis for their breach of contract claim, that contention plainly fails. "[A] deed of trust is not a contract between a borrower and lender; rather, it is a document conveying an interest in real property as

8

security for performance of an obligation under a contract." *Carter v. Sables, LLC*, No. 3:17-cv-00594-MMD-WGC, 2017 WL 6328157, at *4 (D. Nev. Dec. 11, 2017) (citing Restatement (Third) of Property (Mortgages) § 1.1 (Am. Law Inst. 1997)) (dismissing a breach of contract claim without leave to amend in an action involving the plaintiff's mortgage loan because the plaintiff's contract claim was based on a deed of trust). In their opposition to the pending motion, plaintiffs assert that a contractual relationship exists based on the promissory note associated with the deed of trust securing the mortgage serviced by defendant. (Doc. No. 18 at 8.) Though again, plaintiffs acknowledge that they referenced and attached the incorrect deed of trust to their complaint. (*Id.*) Thus, as currently pled, plaintiffs have not alleged the existence of a contract between them and defendant. At the hearing on the pending motion, plaintiffs for the first time argued that they should be granted leave to amend their contract claim because they will add allegations regarding the existence of the promissory note associated with the 2006 deed of trust in their amended complaint.

Further, in its motion and reply, defendant argues that plaintiffs' breach of contract claim would fail even if their reference to the 2006 deed of trust was corrected because plaintiffs cannot allege that they fully performed on any such contract. (Doc. No. 20 at 4.) Specifically, defendant notes that the loan matured in October 2019, and plaintiffs have not alleged that the loan was paid off or that they have an excuse for nonperformance—a necessary element of a breach of contract claim. (*Id.*; Doc. No. 15 at 7–8) (citing *Boland, Inc. v. Rolf C. Hagen (USA) Corp.*, 685 F. Supp. 2d 1094, 1101 (E.D. Cal. 2010)). Plaintiffs did not address this argument in their opposition brief. At the hearing on the pending motion, however, the parties indicated that after briefing on the pending motion was completed, plaintiffs paid the amount due to defendant in full. Thus, it now appears possible that plaintiffs may allege additional facts to support their breach of contract claim against defendant, if leave to amend were to be granted.

**D.  Quiet Title Claim**

Plaintiffs fail to allege a cognizable quiet title claim because they do not allege that they have made a tender of the amount owing or that they have the ability to do so. *See Pascascio v. New Century Mortg. Corp.*, No. 12-cv-00839-PSG-FMO, 2012 WL 1745619, at *3 (C.D. Cal.

9

May 16, 2012) ("under California law, a party seeking to set aside a foreclosure or trustee's sale must make a valid and viable tender of payment of the indebtedness owing") (citation and internal quotation omitted); *see also Wadhwa v. Aurora Loan Servs., LLC*, No. 11-cv-001784-KJM-KJN, 2012 WL 762020, at *9 (E.D. Cal. Mar. 8, 2012) ("Tender of the indebtedness is required to quiet title in California."); *Herrejon v. Ocwen Loan Servicing, LLC*, 980 F. Supp. 2d 1186, 1198 (E.D. Cal. 2013) ("It is settled in California that a mortgagor cannot quiet his title against the mortgagee without paying the debt secured."). Plaintiffs merely allege in their complaint that defendants "claim a security interest in the Subject Property" and that plaintiffs "deny" defendants' claim, (Doc. No. 1 at ¶ 43), which is plainly insufficient in light of this controlling authority. At the hearing on the pending motion, plaintiffs could not point the court to any authority to support their position that tender of payment of the indebtedness was not required in order to maintain a quiet title claim.

### E.     Declaratory Relief Claim

Because plaintiffs have not sufficiently alleged any of their claims, plaintiffs have likewise failed to state a cognizable claim for declaratory relief. *See Darling v. Green*, No. 12-cv-00362-PSG-CW, 2013 WL 12132058, at *9 (C.D. Cal. Apr. 18, 2013) ("[D]eclaratory relief is a remedy, not a freestanding cause of action, and Plaintiffs' action for declaratory relief survives only to the extent that Plaintiffs' other causes of action state a claim for relief.").

### F.     Leave to Amend

Leave to amend should be granted "freely" when justice so requires. Fed. R. Civ. P. 15(a). The Ninth Circuit maintains a policy of "extreme liberality generally in favoring amendments to pleadings." *Rosenberg Bros. & Co. v. Arnold*, 283 F.2d 406, 406 (9th Cir. 1960). Reasons "such as undue delay, bad faith or dilatory motive . . . repeated failure to cure deficiencies . . . undue prejudice to the opposing party . . . [or] futility" may support denial of leave to amend. *Foman v. Davis*, 371 U.S. 178, 182 (1962). A district court "should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Cook, Perkiss and Liehe, Inc. v. N. Cal. Collection Servs.*, 911 F.2d 242, 247 (9th Cir. 1990).

Here, plaintiffs request that they be granted leave to file an amended complaint. (Doc. No. 18 at 9.) Aside from correcting the confusion as to the wrong deed of trust being attached to and referenced in the complaint, plaintiffs do not proffer any allegations that they would include in an amended complaint to cure the deficiencies that the court has identified. At the hearing on the pending motion, plaintiffs argued that leave to amend would not be futile because they can clarify their allegations, including by identifying which specific promissory note underlies their breach of contract claim. While the court is skeptical that plaintiffs will be able to cure the deficiencies in their complaint, particularly as to their quiet title claim, the court will nevertheless grant plaintiffs leave to file a first amended complaint. Plaintiffs are cautioned, however, that the court will not be inclined to grant further leave to amend if they do not use this opportunity to meaningfully attempt to cure the deficiencies in their complaint that the court has now identified on several occasions.

## CONCLUSION

For the reasons explained above,

1. Defendant's request for judicial notice (Doc. No. 15-1) is granted;

2. Defendant's motion to dismiss plaintiffs' complaint is granted, with leave to amend;

3. Plaintiffs shall file their first amended complaint, or alternatively, a notice of their intent to not file a first amended complaint, within fourteen (14) days from the date of entry of this order; and

4. Plaintiffs are warned that their failure to comply with this order may result in dismissal of this action due to plaintiffs' failure to prosecute.

IT IS SO ORDERED.

Dated: **November 28, 2023**

DALE A. DROZD
UNITED STATES DISTRICT JUDGE

11