1
2
3
4
5
6
7
8

UNITED STATES DISTRICT COURT

9

FOR THE EASTERN DISTRICT OF CALIFORNIA

10
11

MICHAEL A. FARIA, et al.,

No.  2:23-cv-02023-DAD-CSK

12

Plaintiffs,

13

v.

ORDER GRANTING DEFENDANT'S MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT AND CLOSING THIS CASE

14

PNC BANK NATIONAL ASSOCIATION, et al.,

15
16

Defendants.

(Doc. No. 27)

17

      This matter is before the court on defendant SN Servicing Corporation's motion to dismiss

18

plaintiffs' first amended complaint.  (Doc. No. 27.)  On January 8, 2024, the pending motion was

19

taken under submission to be decided on the papers pursuant to Local Rule 230(g).  (Doc.

20

No. 28.)  For the reasons explained below, the court will grant defendant's motion to dismiss.

21

**BACKGROUND**

22

      On September 18, 2013, plaintiffs filed their original complaint against defendants PNC

23

Bank, National Association ("PNC Bank"), a mortgage lender, and SN Servicing Corporation

24

("SN Servicing"), a mortgage servicer, seeking a temporary restraining order deferring a trustee

25

sale of plaintiffs' residential property scheduled for October 2, 2023.[1]  (Doc. No. 1.)

26
27
28

---

[1]  Pursuant to a notice of voluntary dismissal filed by plaintiffs on October 3, 2023, defendant PNC Bank National Association was terminated as a named defendant in this action.  (Doc. No. 14.)  Thus, this case proceeds only against defendant SN Servicing.  The court will direct the Clerk of the Court to update the docket accordingly.

1

On September 30, 2023, the court issued an order denying plaintiffs' *ex parte* application for a temporary restraining order (Doc. No. 6) because they had failed to demonstrate that they are likely to succeed on the merits of their claims or that they had even raised serious questions as to the merits of their claims. (Doc. No. 13 at 9.) In that order, the court identified several deficiencies in the allegations of plaintiffs' complaint, which failed to state any cognizable claims. (*Id.*) Despite the court's guidance with regard to the numerous defects in the allegations of their complaint, plaintiffs did not thereafter seek to amend their complaint.

On November 29, 2023, the court granted defendant's motion to dismiss plaintiffs' complaint, and in that order, the court again reiterated the deficiencies with plaintiffs' allegations. (Doc. No. 27.) Even though the court stated that it was "skeptical that plaintiffs will be able to cure the deficiencies in their complaint," the court nevertheless granted plaintiffs leave to file a first amended complaint. (*Id.* at 11.) The court cautioned plaintiffs that it would "not be inclined to grant further leave to amend if they do not use this opportunity to meaningfully attempt to cure the deficiencies in their complaint that the court has now identified on several occasions." (*Id.*)

On December 12, 2023, plaintiffs filed the operative first amended complaint ("FAC") against defendant SN Servicing. (Doc. No. 25.) Plaintiffs allege the following in their FAC.

Plaintiffs reside at and own the property located at 2315 Piccardo Circle, Stockton, California (the "property"), which they purchased in 1988. (*Id.* at ¶¶ 3, 10.) In October 2004, the lender to plaintiffs for their purchase of the property, ABN AMRO Mortgage Group, recorded a deed of trust against the property ("the 2004 deed of trust"). (*Id.* at ¶ 11.)[2] Plaintiffs allege that a promissory note is "included" in the 2004 deed of trust.[3] (*Id.* at ¶ 12.) In their FAC, plaintiffs quote the following language from the 2004 deed of trust: "Transfer of Rights in the Property . . . Borrower [plaintiffs Michael and Nanette Faria] irrevocably grants and conveys to Trustee, in trust, with power of sale, [the property]." (*Id.*) The court notes that the full provision, which

---

[2] Plaintiffs attached a copy of the 2004 deed of trust as an exhibit to their FAC. (Doc. No. 25 at 15–31.)

[3] Plaintiffs did not provide a copy of the promissory note nor quote text that is allegedly contained in the promissory note. Rather, in the FAC's allegations, plaintiffs quote portions of the 2004 deed of trust, in which reference is made to the promissory note.

references the promissory note, states:

> Transfer of Rights in the Property
>
>> This Security Instrument [defined as the deed together with all riders] secures to Lender:  (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of the Borrower's covenants and agreements under this Security Instrument and the Note.  For this purpose, Borrower irrevocably grants and conveys to Trustee, in trust, with the power of sale, [the property].

(Doc. No. 25 at 17–18.)  The 2004 deed of trust defined "Note" as "the promissory note signed by Borrower and dated September 10, 2004," which "states that Borrower owes Lender $128,000 plus interest," and "Borrower has promised to pay this debt in regular periodic payments and to pay the debt in full not later than October 1, 2019."  (*Id.* at ¶ 12.)

       In their allegations, plaintiffs also quote the following two paragraphs from the "Uniform Covenants" section of the 2004 deed of trust:

> Borrower and Lender covenant and agree as follows:
>
>> 1.  **Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges**.  Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrowed shall also pay funds for Escrow Items pursuant to section 3.  . . . .
>>
>> 3.  **Funds for Escrow Items**.  Borrower shall pay to Lender on the day periodic payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for:  (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the property; . . .; (c) premiums for any and all insurance required by Lender under section 5; . . . .  Lender may, at any time, collect and hold Funds in an amount [] sufficient to permit Lender to apply the Funds at the time specified . . . .

(*Id.*)[4]  Plaintiffs allege that pursuant to the promissory note, they were required to provide payments, directly to their lender, "for property taxes and insurance, which [their lender] would apply to property taxes and insurance costs [it] paid directly to third parties (i.e. San Joaquin County Tax Collector and homeowner's insurance provider)."  (*Id.*)

---

[4]  Plaintiffs' FAC contain several typographical errors in quoting these paragraphs, which have been corrected herein, consistent with the text in the 2004 deed of trust.  (Doc. No. 25 at 18–19.)

On or about February 21, 2014, plaintiffs filed a voluntary petition for chapter 13 bankruptcy in the United States Bankruptcy Court for the Eastern District of California.  (Doc. No. 25 at ¶ 14.)  In July 2014, plaintiffs filed a second amended plan of repayment, which included payments to their lender—then PNC Bank, which was serviced by Bayview Loan Servicing LLC ("Bayview").  (*Id.* at ¶¶ 15, 17.)

During the administration of their bankruptcy, plaintiffs discovered that the mortgage servicer (then, Bayview) had not been providing payment for the property taxes on the property directly to the San Joaquin County Tax Collector.  (*Id.* at ¶ 17.)  In October 2015, plaintiffs requested an accounting from Bayview, and on December 23, 2015, Bayview told plaintiffs that they "needed to pay $7,263.32 to bring their impound account (i.e., the account holding their homeowner's insurance and property tax payments) current."  (*Id.* at ¶ 18; *see also id.* at 68–69.)  Plaintiffs paid this amount via check, which Bayview deposited soon thereafter.  (*Id.*)  Because Bayview was unable to account for the payments received from the bankruptcy trustee, on June 30, 2016, plaintiffs' bankruptcy counsel filed a motion in the bankruptcy proceedings to modify their repayment plan and demand an accounting from Bayview.[5]  (*Id.* at ¶¶ 16, 19.)  On March 16, 2017, the bankruptcy court granted the plaintiffs' motion to modify their chapter 13 plan and amended the plan "to provide that the debtors shall make all ongoing monthly post-petition mortgage payments directly to Bayview."  (Doc. No. 25 at ¶ 20; *id.* at 72.)  On or about October 3, 2017, plaintiffs' bankruptcy proceeding was closed.  (*Id.* at ¶ 21.)

Plaintiffs allege, as they did in their original complaint, that "since the closure of [their] bankruptcy, defendant[] [has] constantly bombarded plaintiffs with correspondence and notices demanding payment for amounts allegedly owed for taxes and homeowner's insurance

/////

/////

---

[5]  Plaintiffs attached a copy of their motion to modify their repayment plan as an exhibit to their FAC.  (Doc. No. 25 at 67–69.)  Therein, plaintiffs represented to the bankruptcy court that the bankruptcy trustee had "been paying the ongoing mortgage payment in the amount of $1,381.76, which includes $352.80 per month for taxes and insurance," yet this impound portion of the payment was not being used by the servicer to pay the property taxes on their home.  (*Id.* at 68.)

defendant[] claim[s] [it] paid on plaintiffs' behalf for the [property]." (*Id.* at ¶ 22.)[6]  However, plaintiffs "do not believe that such amounts are owed or believe that plaintiffs paid such amounts directly to the third parties to which the amounts were owed (i.e., San Joaquin County Tax Collection and homeowner's insurance provider)." (*Id.*)

Plaintiffs allege that "[d]espite the promissory note's requirement that plaintiffs pay the loan by October 1, 2019, defendant [] continued to send plaintiffs notices indicating that plaintiffs had an outstanding balance for Escrow Items unpaid." (*Id.* at ¶ 23.)  Plaintiffs further allege that it was not until August 31, 2023 that defendant SN Servicing served plaintiffs with a "notice of trustee sale" claiming that they were in default in the amount of $61,893.37 and that if such amount were not paid to defendant, the property could be sold at a trustee sale scheduled for October 2, 2023.[7]  (*Id.*)  Plaintiffs "denied" defendant's claim and did not receive an accounting despite requesting one.  (*Id.*)  According to plaintiffs, they "are informed and believe that they had paid the loan in full by October 1, 2019." (*Id.*)

On October 30, 2023, while defendant's motion to dismiss plaintiff's original complaint was pending before the court, plaintiffs requested and defendant SN Servicing provided a payoff statement for the amount of $72,134.04 that it alleged plaintiffs owed.  (*Id.* at ¶ 24.)  Despite their opposition to defendant's claim that plaintiffs owed any amount, to prevent the trustee sale, plaintiffs paid $72,134.04 to defendant by cashier's check dated October 31, 2023.  (*Id.* at ¶ 25.)
/////

---

[6]  Plaintiffs allege on information and belief that defendant SN Servicing is the successor-in-interest to their lender.  (Doc. No. 25 at ¶ 13.)  However, the exhibits that plaintiffs refer to in that allegation, as well as the records that defendant requests this court judicially notice, indicate that a different entity, U.S. Bank Trust National Association, as Trustee of the LB-Dwelling Series V Trust ("U.S. Bank Trust"), is the successor lender, and defendant SN Servicing is U.S. Bank Trust's *servicer*.  (*See* Doc. No. 27-1 at 22–23, 25–26.)  Plaintiffs' allegations do not provide any information as to when defendant SN Servicing became the successor to Bayview as the servicer on their mortgage.  According to defendant and two assignments of deed of trust that were recorded in the Official Records of the San Joaquin County Recorder, Bayview was the servicer on plaintiffs' loan from November 2015 through July 2022.  (Doc. No. 27 at 5; 27-1 at 41–44.)  Defendant also asserts that it began servicing the loan for U.S. Bank Trust in 2023.  (Doc. No. 27 at 6.)

[7]  Plaintiffs attached a copy of the notice of trustee sale to their FAC.  (Doc. No. 25 at 74–76.)

1    Based on the foregoing allegations, plaintiffs bring the following three claims against

2   defendant in their FAC:  (1) breach of contract; (2) violation of the Fair Debt Collection Practices

3   Act ("FDCPA"), 15 U.S.C. §§ 1692, *et seq.*; and (3) violation of California's Rosenthal Fair Debt

4   Collection Practices Act ("Rosenthal Act"), California Civil Code §§ 1788, *et seq.*  (Doc. No. 25

5   at 6–9.)  In their FAC, plaintiffs no longer seek injunctive relief but instead seek "compensatory

6   damages in an amount to be determined at trial according to proof, and attorney's fees and costs

7   as permitted."  (*Id.* at 9.)

8    On December 26, 2023, defendant filed the pending motion to dismiss plaintiffs' FAC in

9   its entirety due to plaintiffs' failure to state a cognizable claim for relief.[8]  (Doc. No. 27.)  On

10   January 9, 2024, plaintiffs filed an opposition to defendant's pending motion.  (Doc. No. 29.)  On

11   January 19, 2024, defendant filed its reply thereto.  (Doc. No. 31.)

12                            **LEGAL STANDARD**

13    The purpose of a motion to dismiss pursuant to Rule 12(b)(6) is to test the legal

14   sufficiency of the complaint.  *N. Star Int'l v. Ariz. Corp. Comm'n*, 720 F.2d 578, 581 (9th Cir.

15   1983).  "Dismissal can be based on the lack of a cognizable legal theory or the absence of

16   sufficient facts alleged under a cognizable legal theory."  *Balistreri v. Pacifica Police Dep't*, 901

17   F.2d 696, 699 (9th Cir. 1990).  A plaintiff is required to allege "enough facts to state a claim to

18   relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  "A

19   claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw

20   the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v.*

21   *Iqbal*, 556 U.S. 662, 678 (2009).

22

23   ---

[8]  Defendant also concurrently filed a request for judicial notice of seven documents on file in the
public records of the San Joaquin County Recorder and a copy of the court docket for plaintiffs'
bankruptcy case retrieved on PACER.  (Doc. No. 27-1.)  Because all of these documents are
matters of public record and their existence is not subject to reasonable dispute, the court will
grant defendant's request and take judicial notice of them. *See Grant v. Aurora Loan Servs., Inc.*,
736 F. Supp. 2d 1257, 1264 (C.D. Cal. 2010) (collecting cases taking judicial notice of documents
recorded by the county recorder's office); *see also United States v. Black*, 482 F.3d 1035, 1041
(9th Cir. 2007) (noting that a court "may take notice of proceedings in other courts, both within
and without the federal judicial system, if those proceedings have a direct relation to matters at
issue").

In determining whether a complaint states a claim on which relief may be granted, the court accepts as true the allegations in the complaint and construes the allegations in the light most favorable to the plaintiff. *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984). However, the court need not assume the truth of legal conclusions cast in the form of factual allegations. *U.S. ex rel. Chunie v. Ringrose*, 788 F.2d 638, 643 n.2 (9th Cir. 1986). While Rule 8(a) does not require detailed factual allegations, "it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678. A pleading is insufficient if it offers mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555; *see also Iqbal*, 556 U.S. at 676 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). Moreover, it is inappropriate to assume that the plaintiff "can prove facts that it has not alleged or that the defendants have violated the . . . laws in ways that have not been alleged." *Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983).

In ruling on a motion to dismiss under Rule 12(b)(6), the court is permitted to consider material that is properly submitted as part of the complaint, documents that are not physically attached to the complaint if their authenticity is not contested and the plaintiffs' complaint necessarily relies on them, and matters of public record. *Lee v. City of Los Angeles*, 250 F.3d 668, 688–89 (9th Cir. 2001).

## ANALYSIS

In the pending motion, defendant argues that despite the court's repeated guidance, plaintiffs have still failed to state a cognizable claim in their FAC. (Doc. No. 27.) Defendant asserts that the FAC's "vague allegations as to an alleged accounting error with respect to escrow and insurance amounts" are insufficient to support their claims in this action because plaintiffs "conveniently overlook[] the fact that their loan matured on October 1, 2019, and was not paid in full by that date." (*Id.* at 3.) Defendant emphasizes that plaintiffs' allegations "fail to substantiate that they paid the loan timely" and instead vaguely allege that they "believe" the loan was timely paid in full. (*Id.*)

/////

In their opposition, plaintiffs merely recite the allegations appearing in their FAC and do not meaningfully address the arguments defendant raises in its pending motion to dismiss.  (Doc. No. 29 at 2–5.)  Plaintiffs base their conclusory counterarguments on certain allegations that they represent as being made in their FAC (without any citation)—but those allegations are in fact absent from the FAC.  For example, in their opposition brief, plaintiffs state:  "In their FAC, plaintiffs alleged that both during their bankruptcy and after its closure, they provided mortgage payments to Bay View, Defendant's predecessor, and to Defendant."  (Doc. No. 29 at 6.)  Plaintiffs do not provide any citation to any particular paragraph in their FAC to support this statement.  Contrary to plaintiffs' representation, nowhere in the FAC do plaintiffs allege that they made any payments whatsoever to Bayview or defendant *after* October 3, 2017 when their bankruptcy proceedings closed.  In another example, plaintiffs state in their opposition brief that they "alleged that they had paid the loan in full by October 1, 2019" (Doc. No. 29 at 6), but what plaintiffs actually allege in their complaint is that they "are informed and believe that they had paid the loan in full by October 1, 2019," (Doc. No. 25 at ¶ 23).  Plaintiffs do not allege from whom they are so informed nor what facts form the basis of their purported belief.  In yet another example, plaintiffs state in their opposition brief that they allege in their FAC "that they not only provided payments to defendant[] but were required to provide direct payments for their homeowner's insurance and property taxes to third parties other than defendant even though the [promissory] note required defendant to use plaintiffs' payments to pay such expenses."  (Doc. No. 29 at 6.)  However, as noted above, nowhere in the FAC do plaintiffs allege that they made payments to defendant.  Further, there are no allegations in the FAC that plaintiffs were required to pay third parties directly for their homeowner's insurance and property taxes.  As discussed below with regard to each of their claims, plaintiffs simply offer no legitimate counterarguments in their opposition to defendant's motion to dismiss, which, in contrast, is well-supported and persuasive.

## A.    Breach of Contract Claim

In their FAC, plaintiffs allege that because they are "informed and believe that they paid the loan in full by October 1, 20219," they have "performed all the acts, services and conditions

1    required on its part to be performed pursuant to the promissory note, referenced in [the 2004 deed

2    of trust], or such performance has been excused."  (Doc. No. 25 at ¶ 27.)  Plaintiffs further allege

3    that despite their performance, defendant "breached the terms of the Agreement by continuing to

4    attempt to collect debts associated with the Promissory Note which defendant[] knew or should

5    have known were not due."  (*Id.* at ¶ 28.)  Plaintiffs also allege that "[a]lthough plaintiffs have

6    demanded that defendant[] perform, defendant[] ha[s] refused to perform pursuant to the terms of

7    the Promissory Note."  (*Id.* at ¶ 29.)

8         The court again finds that plaintiffs' allegations are insufficient to state a breach of

9    contract claim.  First, plaintiffs again refer to an "Agreement" in their FAC without having

10   alleged facts defining or specifying any such agreement.  Second, even assuming that plaintiffs

11   intend for their reference to an Agreement to mean the promissory note that is referenced in the

12   2004 deed of trust, plaintiffs have not attached a copy of that note to their FAC, nor do they quote

13   any of its terms, nor point to any particular provision that they contend defendant has breached.

14   *See Young v. Facebook, Inc.*, 790 F. Supp. 2d 1110, 1117 (N.D. Cal. 2011) (dismissing a breach

15   of contract claim where the plaintiff failed to provide specificity regarding what contractual

16   provisions the defendant had allegedly violated).  In their FAC, plaintiffs only quote select

17   portions of the 2004 deed of trust.  As the court has already explained to plaintiffs, twice, a deed

18   of trust is not a contract and cannot serve as the basis for their breach of contract claim.  (Doc.

19   No. 24 at 8–9) (quoting *Carter v. Sables, LLC*, No. 3:17-cv-00594-MMD-WGC, 2017 WL

20   6328157, at *4 (D. Nev. Dec. 11, 2017) ("[A] deed of trust is not a contract between a borrower

21   and lender; rather, it is a document conveying an interest in real property as security for

22   performance of an obligation under a contract.")).  Third, even if the promissory note were the

23   contract underlying plaintiffs' claim, the claim is still insufficiently alleged.  The portion of the

24   2004 deed of trust that is quoted in plaintiff's FAC indicates that the note required plaintiffs to

25   pay the $128,000 debt "in regular periodic payments and to pay the debt in full not later than

26   October 1, 2019."  (Doc. No. 25 at ¶ 12.)  Plaintiffs' allegation that they believe they paid the

27   loan in full by that date is conclusory and wholly unsupported by any alleged facts to substantiate

28   such a belief.

9

Moreover, as defendant points out in its reply brief (Doc. No. 31 at 3), such a belief would appear to be belied by other representations plaintiffs have made in filings with this court and in their most recent bankruptcy filings in October 2023.  For example, in the motion for a temporary restraining order that plaintiffs filed in this action on September 28, 2023, plaintiffs asserted that "the only visible harm is that defendants may be entitled to approximately $61,893.97"—an amount reflecting the total balance due on the loan, including the balance due for escrow items (property taxes and insurance).  (Doc. No. 6 at ¶¶ 17, 20, 41.)  In arguing in that motion that they were likely to succeed on the merits of their claims, plaintiffs did not assert that they had already paid the loan in full several years ago, by October 1, 2019; rather, plaintiffs only challenged the accuracy of defendant's accounting as to the escrow balance purportedly due.  (*Id.* at ¶ 35.)  Moreover, according to defendant, plaintiffs listed defendant as a secured creditor in the amount of $61,893.97 on a bankruptcy petition that plaintiffs filed on October 1, 2023 and that was dismissed by the bankruptcy court on October 20, 2023.  (Doc. Nos. 31 at 3; 27-1 at 38–19.)

For these reasons, the court will grant defendant's motion to dismiss plaintiffs' breach of contract claim, without leave to amend.  The court finds that the granting of further leave to amend would be futile under the circumstances, given that plaintiffs have already been given an opportunity to amend their allegations to cure the deficiencies the court had identified in its prior order, and plaintiffs failed to do so.

**B.     Fair Debt Collection Practices Act Claim**

The FDCPA governs the conduct of a "debt collector," which is defined in that statute as meaning "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another."  15 U.S.C.A. § 1692a(6).  The FDCPA further clarifies that "[f]or the purpose of section 1692f(6) of this title, such term also includes any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the enforcement of security interests."  *Id.*  "[T]he Supreme Court held that an entity 'principally involved in "the enforcement of security interests" is not a debt collector except for the purpose

1  of section 1692f(6) [of the FDCPA].'" *Tierney v. Carrington Mortg. Servs., LLC*, No. 22-35221,

2  2023 WL 2783241, at *2 (9th Cir. Apr. 5, 2023)[9] (quoting *Obduskey v. McCarthy & Holthus*

3  *LLP*, 586 U.S. __, 139 S. Ct. 1029, 1033 (2019)); *see also Vien-Phuong Thi Ho v. ReconTrust*

4  *Co., NA*, 858 F.3d 568, 572 (9th Cir. 2017) (finding that "actions taken to facilitate a non-judicial

5  foreclosure, such as sending the notice of default and notice of sale, are not attempts to collect

6  'debt' as that term is defined by the FDCPA").  Thus, the only provision in the FDCPA that

7  applies to entities enforcing security interests is § 1692f(6).[10]

8       Specifically, § 1692f(6) provides that the following conduct is a violation of this section:

9
10      (6)  Taking or threatening to take any nonjudicial action to effect dispossession or disablement of property if--

11         (A) there is no present right to possession of the property claimed as collateral through an enforceable security interest;
12

13         (B) there is no present intention to take possession of the property; or

14         (C) the property is exempt by law from such dispossession or disablement.
15

16  15 U.S.C.A. § 1692f(6).

17       In their FAC, plaintiffs merely recite this provision and allege that defendant "violated

18  this provision through the use of correspondence and notices threatening to take nonjudicial

19  action (i.e., the trustee sale) to dispossess plaintiffs of the [] property without a legal ability or

20  intention to do so."  (Doc. No. 25 at ¶ 34.)  However, as with their original complaint, plaintiffs

21  still have not alleged any facts to support an FDCPA claim predicated on an asserted violation of

22

---

23  [9]  Citation to this unpublished Ninth Circuit opinion is appropriate pursuant to Ninth Circuit Rule 36-3(b).
24

25  [10]  Although plaintiffs also allege that defendant violated § 1692e(6), their allegations are insufficient as a matter of law to support an FDCPA claim predicated on that subsection because,
26  as the court explained in its prior order, plaintiffs have not sufficiently alleged that defendant SN Servicing is a "debt collector" as that term is defined in the FDCPA or that foreclosing on a
27  mortgage constitutes debt collection under the FDCPA.  (*See* Doc. No. 24 at 6.)  Accordingly, the court will not address in this order the parties' respective arguments with regard to whether
28  plaintiffs sufficiently alleged violations of § 1692e(6).

§ 1692f(6), despite the court's prior order pointing out this deficiency.  (*See* Doc. No. 24 at 6–7.)  Rather, plaintiffs rely solely on their new allegation that they "are informed and believe that they had paid the loan in full by October 1, 2019," to argue that defendant was not entitled to send them the notice of trustee sale, which claimed that plaintiffs were in default on the loan.  (Doc. No. 29 at 7.)  However, as the court explained above, plaintiffs' conclusory allegation in this regard is unsupported by any alleged facts as to the source of such information and the basis for their asserted belief, the absence of which is particularly telling given that their representations in prior court filings suggested they had not paid back the loan in full.  In short, this bare conclusory allegation does not serve to save plaintiff's FDCPA claim from dismissal.

For these reasons, the court will grant defendant's motion to dismiss plaintiffs' FDCPA claim, without leave to amend.  Here too, the court finds that the granting of further leave to amend would be futile given that plaintiffs have already been given an opportunity to amend their allegations to state a cognizable FDCPA claim, and plaintiffs failed to do so.

**C.      Rosenthal Act Claim**

Unlike the FDCPA, under California law, "a nonjudicial foreclosure can be 'debt collection' by a 'debt collector' so as to trigger the protections of the Rosenthal Act."  *Best v. Ocwen Loan Servicing, LLC*, 64 Cal. App. 5th 568, 580 (2021).  As to this claim, the parties do not dispute that plaintiffs have alleged that defendant is "debt collector" as defined by the Rosenthal Act.

In the court's prior order, plaintiffs' Rosenthal Act claim was dismissed in part because plaintiffs had not alleged which provisions of the Rosenthal Act defendant allegedly violated or which specific actions allegedly undertaken by defendant were purportedly unlawful.  (Doc. No. 22 at 8) (citing *Mohandas v. Wells Fargo Bank, N.A.*, No. 21-cv-03349-JAK-PD, 2023 WL 5506004, at *11 (C.D. Cal. July 13, 2023) (dismissing a Rosenthal Act claim brought against a mortgage servicer where the plaintiff did not allege that the defendant engaged in any particular actions prohibited by the Rosenthal Act or specify any provisions that were allegedly violated)).  Now, in their FAC, plaintiffs allege that defendant violated the provision of the Rosenthal Act that, according to plaintiffs, "prohibits a debt collector from threatening the sale of property

unless such action is permitted by law."  (Doc. No. 25 at ¶ 42) (citing Cal. Civ. Code § 1788.10(d)).  However, plaintiffs mischaracterize § 1788.10(d), the provision on which they rely for their Rosenthal Act claim.  That subsection actually provides as follows:

> No debt collector shall collect or attempt to collect a consumer debt by means of the following conduct:  . . .  The threat to the debtor to sell or assign to another person the obligation of the debtor to pay a consumer debt, with an accompanying false representation that the result of such sale or assignment would be that the debtor would lose any defense to the consumer debt . . . .

Cal. Civ. Code § 1788.10(d).  Plaintiffs have simply not alleged any facts that would be sufficient to state a violation of this subsection.  Moreover, plaintiffs offer no coherent argument in their opposition as to how their conclusory allegation that they believe they paid the loan in full suffices to render defendant's conduct in serving plaintiffs with the notice of trustee sale a violation of this subsection of the Rosenthal Act.

Accordingly, the court will also grant defendant's motion to dismiss plaintiffs' Rosenthal Act claim, without leave to amend, as the court finds that the granting of further leave to amend would be futile.

## CONCLUSION

For the reasons explained above,

1.  Defendant's request for judicial notice (Doc. No. 27-1) is granted;

2.  Defendant's motion to dismiss plaintiffs' FAC (Doc. No. 27) is granted;

3.  This action is dismissed without further leave to amend;

4.  The Clerk of the Court is directed to update the docket to reflect that defendant PNC Bank National Association was terminated as a named defendant in this action on October 3, 2023; and

5.  The Clerk of the Court is directed to close this case.

IT IS SO ORDERED.

Dated:   **April 12, 2024**                    _____
                                                            DALE A. DROZD
                                                            UNITED STATES DISTRICT JUDGE